1  BINGHAM MCCUTCHEN LLP
   TRENTON H. NORRIS (SBN 164781)
2  THOMAS S. HIXSON (SBN 193033)
   MAZEN M. BASRAWI (SBN 235475)
3  ERICA BRAND PORTNOY (SBN 244923)
   Three Embarcadero Center
4  San Francisco, CA  94111-4067
   Telephone:  415.393.2000
5  Facsimile:  415.393.2286
   Email:  trent.norris@bingham.com
6          thomas.hixson@bingham.com
           mazen.basrawi@bingham.com
7          erica.brand@bingham.com

8  DOLL AMIR & ELEY LLP
   GREGORY L. DOLL (SBN 193205)
9  HUNTER R. ELEY (SBN 224321)
   1888 Century Park East, Suite 1106
10 Los Angeles, CA 90067
   Telephone:  310.557.9100
11 Facsimile:  310.557.9101
   Email:  gdoll@dollamir.com
12         heley@dollamir.com

13 Attorneys for Plaintiff
   JONATHAN BROWNING, INC.

14

15             UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17               SAN FRANCISCO DIVISION

18

19 JONATHAN BROWNING, INC., a California      No. C 07-3983 JSW
   corporation,
20                                            **MEMORANDUM OF POINTS AND**
                  Plaintiff,                  **AUTHORITIES IN OPPOSITION TO**
21        v.                                  **DEFENDANTS' MOTION TO**
                                              **DISMISS**
22 VENETIAN CASINO RESORT, LLC., a Nevada
   limited liability company; LAS VEGAS SANDS, Date:   November 9, 2007
23 LLC., a Nevada limited liability company; LAS Time:  9:00 a.m.
   VEGAS SANDS CORP., a Nevada corporation;  Place:  Courtroom 2, 17th Floor
24 and DOES 1 through 100, inclusive ,        Judge: Honorable Jeffrey S. White

25                Defendants.

26

27

28
   A/72216517.10/3006638-0000326553

TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT ................................................................................. 1

II.   FACTUAL ALLEGATIONS .................................................................................. 2

III.  ARGUMENT ........................................................................................................ 3

A.    The Court Has Jurisdiction Over This Case.............................................. 3

1.    The Court Has Subject Matter Jurisdiction................................. 3

2.    This Court Has Personal Jurisdiction Over Defendants............................. 4

B.    Venue Is Proper in This District................................................................. 10

1.    Venue Is Proper Under 28 U.S.C. § 1400(a)............................. 10

2.    Venue Is Proper Under 28 U.S.C. § 1391(b)(2)...................................... 11

3.    Transfer To Las Vegas Is Not Appropriate.............................................. 12

C.    Plaintiff Has Properly Pled Implied Contract Claims ........................................ 14

D.    Plaintiff Has Stated Claims Against the Holding Companies............................. 15

E.    The Copyright Act Does Not Preempt Plaintiff's California Law Claims .......... 15

IV.   CONCLUSION ...................................................................................................... 16

1

TABLE OF AUTHORITIES

2

<u>Page</u>

3

<u>CASES</u>

4

5 *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474 (S.D.N.Y. 2006) .................................................................................................................... 13

6 *Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) .......................................................... 4

7 *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000) .......................... 8

8 *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ............................................................ 7, 8

9 *Caruth v. Int'l Psychoanalytical Assoc.*, 59 F.3d 126 (9th Cir. 1995)............................................ 8

10 *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ................. 16

11 *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800 (2001)...................... 16

12 *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113 (C.D. Cal. 1998)............................... 12, 13

13 *Coremetrics, Inc. v. AtomicPark.com, LLC*, 370 F. Supp. 2d 1013 (N.D. Cal. 2005) ................................................................................................................... 6

14 *Desny v. Wilder*, 46 Cal. 2d 715 (1956)..................................................................... 14

15 *Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002)............................................... 7, 9

16 *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115 (N.D. Cal. 2001)................................... 16

17 *First of Mich. Corp. v. Bramlet*, 141 F.3d 260 (6th Cir. 1998).................................................... 11

18 *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086 (N.D. Cal. 2002)................... 12

19 *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984)..................................................... 10

20 *Globe Glass & Mirror Co. v. Brown*, 888 F. Supp. 768 (E.D. La. 1995).................................. 11

21 *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) ..................................... 5

22 *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) ............................................................................................................... 4, 6, 8

23 *Hawaiian Village Computer, Inc. v. Print Mgmt. Partners, Inc.*, __ F. Supp. 2d __, No. 06-12803, 2007 WL 431017 (E.D. Mich. Feb. 5, 2007)............................................ 4

24 *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499 (1997) ............................................. 16

25 *Institute of Veterinary Pathology, Inc. v. Cal. Health Labs., Inc.*, 116 Cal. App. 3d 111 (1981)..................................................................................................................... 15

26 *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310 (1945)........................................................... 4

27

28

MEMORANDUM OF POINTS AND AUTHORITIES<br>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1

TABLE OF AUTHORITIES
(continued)

2                                                                                    Page

3   *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) .................................................. 13

4   *Kelly v. Qualitest Pharms., Inc.*, No. CIV- F-06-116, 2006 U.S. Dist. LEXIS
        65814 (E.D. Cal. Aug. 31, 2006) .................................................................................... 11

5
    *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220 (1991) ...................... 15

6
    *Menken v. Emm*, __ F.3d __, No. 05-16467, 2007 U.S. App. LEXIS 22327 (9th
7        Cir. Sept. 19, 2007) .................................................................................................. 6, 7, 9

8   *Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) ................................................ 8, 10

9   *Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154 (C.D. Cal.
        2000) ........................................................................................................................ 11
10
    *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ...................................... 5, 9, 10
11
    *Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296 (C.D. Cal. 1996) ................................ 12
12
    *Provident Nat'l Bank v. Lehman Mgmt. Co.*, 819 F.2d 434 (3d Cir. 1987) ............................ 6
13
    *Rodriguez v. Cal. Hwy. Patrol*, 89 F. Supp. 2d 1131 (N.D. Cal. 2000) .................................... 11
14
    *Sebastian Int'l, Inc. v. Russolillo*, No. 00-03476, 2000 U.S. Dist. LEXIS 21510
15       (C.D. Cal. Aug. 25, 2000) ................................................................................................ 12

16  *Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085 (N.D. Cal. 2003) ...................... 11, 12

17  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988) .................................................. 9

18  *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434 (9th Cir.
        1993) ............................................................................................................................ 16
19
    *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275 (Fed. Cir.
20       2005) ............................................................................................................................ 10

21  *Uffner v. La Reunion Francaise*, 244 F.3d 38 (1st Cir. 2001) .................................................... 11

22  *Williams v. Bowman*, 157 F. Supp. 2d 1103 (N.D. Cal. 2001) .................................................. 13

23

STATUTES

24
    17 U.S.C. § 301(a) ............................................................................................................ 15
25
    17 U.S.C. § 411(a) ...................................................................................................... 1, 3, 4
26
    28 U.S.C. § 1391 ...................................................................................................... 2, 10, 11
27
    28 U.S.C. § 1391(b)(2) ............................................................................................ 2, 11
28

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

TABLE OF AUTHORITIES
(continued)

Page

28 U.S.C. § 1400(a) ................................................................................................ 10

28 U.S.C. § 1404(a) ................................................................................................ 12

Cal. Code Civ. Proc. § 410.10 .................................................................................. 4

RULES

Fed. R. Civ. Proc. 45(c)(3)(A)(ii) ............................................................................ 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

I.    **SUMMARY OF ARGUMENT**

Plaintiff Jonathan Browning, Inc. has sued the Venetian and its parent holding companies for their massive copying of Plaintiff's sconces. Jonathan Browning submitted a bid to the Venetian in September 2006 to provide more than 11,000 sconces to be used as part of the Venetian's Tower Remodel Project. The Venetian turned down the bid, then ripped off Jonathan Browning's designs, installing thousands of illegal copies throughout its hotel.

The Venetian's arguments in its motion to dismiss are without merit. Its opening argument – that the Copyright Act requires a copyright registration prior to filing an infringement action – is simply wrong. The Act provides that a plaintiff whose copyright application has been submitted to and rejected by the Copyright Office "is entitled to institute an action for infringement." 17 U.S.C. § 411(a). That is what happened here.

The Venetian is also wrong in contending that the Court lacks personal jurisdiction over Defendants. The Venetian's substantial advertising in California and the large percentage of its customers who are Californians gives rise to general jurisdiction over the Venetian. In addition, the Venetian's numerous contacts with California in connection with the events giving rise to this case – such as sending its agent to Los Angeles to purchase the sconces it copied, negotiating and sending written communications directly to the San Francisco office of Jonathan Browning for the bid solicitation – also provide specific jurisdiction here.

The Venetian makes a cursory attempt at disputing the facts alleged in the Complaint. It submits a declaration by Franklin Levy, who says he "cannot find any record of requesting a bid from Jonathan Browning," and it is his "understanding" that the Venetian employee who solicited the bid, Aileen Pauco, has never been employed by the Venetian. Levy Decl. ¶¶ 10-11. That is nonsense. We submit as Exhibit A to the Declaration of Marco Heithaus the Venetian's April 2006 bid solicitation, faxed to the San Francisco office of Jonathan Browning by the employee the Venetian says does not exist.

Venue is appropriate in this District. The Venetian's invitation for the bid was sent to Plaintiff, a San Francisco company, at its San Francisco office. The copyrighted works at issue were created in San Francisco. The injury caused by the Venetian's conduct will be felt in

1  San Francisco.  Two of the key witnesses in the case – Jonathan Browning, the designer of the

2  sconces at issue, and Marco Heithaus, his business partner who presented the bid – reside here.

3  The Venetian identifies zero percipient witnesses located in Las Vegas.  In any event, the

4  question is not whether San Francisco or Las Vegas is the "best" venue, as Congress repealed the

5  best venue requirement 17 years ago.  The question is whether the Northern District of California

6  is "a judicial district in which a substantial part of the events or omissions giving rise to the

7  claim, occurred, or a substantial part of the property that is the subject of the action is situated."

8  28 U.S.C. § 1391(b)(2).  The answer is yes.

9        The Venetian's remaining arguments are also without merit.  The Court should

10  deny the Venetian's motion to dismiss.

11  **II.     FACTUAL ALLEGATIONS**

12        Jonathan Browning is a prominent designer and supplier of high-end decorative

13  interior lighting fixtures.  Compl. ¶ 15.  Plaintiff's creative artist is also its namesake:  Jonathan

14  Browning ("Mr. Browning").  *Id.*  Mr. Browning's work has been highly acclaimed and

15  recognized for its highly innovative and beautiful designs including the Trianon and Ledoux

16  sconces.  *Id.* ¶¶ 15-16.  Jonathan Browning is a California corporation with its principal place of

17  business located in San Francisco.  *Id.* ¶ 5.

18        Beginning last year, the Venetian has been renovating its all-suite hotel in

19  Las Vegas.  *Id.* ¶ 17.  As part of its renovation efforts, the Venetian purchased, through its buyer

20  Aileen Pauco, two Trianon sconces and eight Ledoux sconces from the David Sutherland

21  Showroom in Los Angeles.  *Id.* ¶¶ 18-19.  Ms. Pauco requested that Jonathan Browning provide

22  a bid for more than 11,000 additional sconces for its renovation project.  *Id.*; *see also* Declaration

23  of Marco Heithaus ("Heithaus Decl."), Ex. A.  Jonathan Browning had recently found an

24  overseas manufacturer, Diamond Life Lighting Manufacturing (H.K.) Ltd. ("Diamond Life"),

25  that would be able to meet Jonathan Browning's high quality standards at a lower price than its

26  U.S. manufacturer.  Compl. ¶ 20.  On September 7, 2006 Jonathan Browning submitted a bid for

27  11,368 sconces at a competitive price, which would have been Jonathan Browning's largest sale

28  to date.  *Id.* ¶ 21.  The next day the Venetian declined Jonathan Browning's bid without seeking

1   any further negotiations. *Id*. ¶ 22.

2          On May 21, 2007 an interior designer familiar with Jonathan Browning's sconces

3   informed Mr. Browning that the Venetian was using its designs as part of its renovation. *Id*.

4   ¶ 24. Mr. Browning traveled to Las Vegas and observed firsthand copies of the Trianon and

5   Ledoux sconces installed all over the Venetian's property. *Id*. ¶¶ 25-26. The Venetian obtained

6   copies of the Trianon and Ledoux sconces from Jonathan Browning's primary factory in China,

7   Diamond Life, without Jonathan Browning's knowledge or authorization. *Id*. ¶ 32.

8          Jonathan Browning brings three types of claims against the Venetian. First,

9   Plaintiff alleges copyright infringement due to the reproduction and public display of its sconces.

10   *Id*. ¶¶ 38-73. Second, Jonathan Browning alleges unfair and fraudulent competition under

11   California law due to the Venetian's deceptive conduct in the bidding process and the

12   interference with Jonathan Browning's contractual relationship with Diamond Life. *Id*. ¶¶ 74-85

13   (incorporating by reference the allegations in ¶¶ 3, 22-23, 32-33, among others). Third, Jonathan

14   Browning alleges implied contract claims. In the relevant industry, it is understood that the

15   submission of a bid at the request of a potential purchaser is an offer to sell, and that use of the

16   submitted design constitutes an acceptance, obligating the purchaser to pay. The Venetian was

17   entirely free to reject Jonathan Browning's bid and use someone else's designs, or come up with

18   its own designs, or not buy any sconces at all. However, it was not free to accept what was

19   offered in the bid and pay nothing in return. Under state contract law, using Jonathan

20   Browning's submitted designs obligated the Venetian to pay for them. *Id*. ¶¶ 86-95.

21   **III.    ARGUMENT**

22       **A.    The Court Has Jurisdiction Over This Case.**

23             **1.    The Court Has Subject Matter Jurisdiction.**

24          Defendants contend that the Court lacks subject matter jurisdiction because

25   Jonathan Browning cannot bring a claim under the Copyright Act, 17 U.S.C. § 411(a), because it

26   does not have a registered copyright. That is wrong. The Copyright Act provides that "[i]n any

27   case, however, where the deposit, application, and fee required for registration have been

28   delivered to the Copyright Office in proper form and registration has been refused, the applicant

1  is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is

2  served on the Register of Copyrights."  17 U.S.C. § 411(a); *see Hawaiian Village Computer, Inc.*

3  *v. Print Mgmt. Partners, Inc.*, __ F. Supp. 2d __, No. 06-12803, 2007 WL 431017, at *2 (E.D.

4  Mich. Feb. 5, 2007) ("a copyright owner can ultimately sue regardless of whether an application

5  for registration is granted or rejected").  Here, Jonathan Browning has applied for and been

6  refused registration for its designs.  At the pleading state, Jonathan Browning need only allege

7  that it has satisfied the statutory preconditions to sue under 17 U.S.C. § 411(a).  *See* Compl. ¶ 11.

8  But in any event, those allegations are true.  *See* Heithaus Decl. ¶¶ 2-3; Declaration of Thomas S.

9  Hixson ¶ 3.  Accordingly, the Court has subject matter jurisdiction over this case.

10  ## 2.      This Court Has Personal Jurisdiction Over Defendants.

11  The Venetian is also mistaken in contending that the Court lacks personal

12  jurisdiction over the Defendants.  Rather, the Court has both general and specific jurisdiction

13  over them.  General jurisdiction exists as a result of the Venetian's widespread advertising in

14  California and the substantial amount of sales its contacts with California generate.  Specific

15  jurisdiction exists because the Venetian directed its contacts at Jonathan Browning in California,

16  the claims at issue arose out of those contacts, and jurisdiction over the Venetian is reasonable.

17  At the pleading stage, Jonathan Browning need only make a *prima facie* showing

18  of jurisdictional facts to defeat the motion to dismiss.  *Ballard v. Savage*, 65 F.3d 1495, 1498

19  (9th Cir. 1995).  Unless directly refuted, the allegations in its Complaint must be taken as true.

20  *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

21  Under the California long arm statute, "[a] court of this state may exercise

22  jurisdiction on any basis not inconsistent with the Constitution of this state or of the United

23  States."  Cal. Code Civ. Proc. § 410.10.  To satisfy constitutional due process, a nonresident

24  defendant must have "certain minimum contacts with [the forum] such that the maintenance of

25  the suit does not offend traditional notions of fair play and substantial justice."  *Harris Rutsky &*

26  *Co. Ins. Servs.*, 328 F.3d at 1129 (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316

27  (1945)).  Such minimum contacts can give rise to general or specific jurisdiction, either of which

28  is sufficient to satisfy the constitutional requirements.  *Panavision Int'l, L.P. v. Toeppen*, 141

1  F.3d 1316, 1320 (9th Cir. 1998).  Both exist here.

2        **a.**      **Defendants' Activities Give Rise to General Jurisdiction.**

3        General jurisdiction exists when the defendant's activities in the forum are

4  "substantial" or "continuous and systematic."  *Id.*  The Venetian's are.  The Venetian's contacts

5  with this forum include widespread advertising and marketing through multiple channels

6  received by California residents.  In a complaint filed in the Northern District of California in

7  2003, the Venetian itself argued that it invested in extensive advertising, including Internet,

8  television, newspaper, magazine, direct mail, and billboards, to promote the Venetian Resort.

9  *See* Request for Judicial Notice ("RJN"), Ex. A at 5:10-12.  To support its argument that the

10  defendants in that case had knowledge of the Venetian, the Venetian emphasized that it

11  specifically targeted the Northern District of California in its advertising efforts:  "[T]he

12  Northern California area is one of the specific markets in which Venetian Resort advertises

13  concurrently on television, in newspapers, and on billboards."  *Id.*, Ex. A at 6:16-18.  The

14  Venetian is estopped to deny those facts now.  *See Hamilton v. State Farm Fire & Cas. Co.*, 270

15  F.3d 778, 782 (9th Cir. 2001) ("Judicial estoppel is an equitable doctrine that precludes a party

16  from gaining an advantage by asserting one position, and then later seeking an advantage by

17  taking a clearly inconsistent position.") (citation omitted).

18        In addition, the Venetian maintains a highly interactive website accessible to

19  California residents 24 hours a day.  RJN, Ex. A at 5:15-18.  In 2006, 43% of visitors to Las

20  Vegas used the Internet to plan their trip, and 40% used the hotel's website to book their

21  accommodations.  *See* Hixson Decl., Ex. A (figs. 20 and 23).  The Venetian's advertising and

22  marketing schemes are apparently successful.  *See* RJN, Ex. A at 5:12-13 ("The result [of the

23  Venetian's extensive advertising] has made the Venetian Resort one of the most recognized

24  casino brands in the United States and the world.").  Significantly, 32% of all visitors to Las

25  Vegas in 2006 were from California alone.  Hixson Decl., Ex. A (fig. 69).  This percentage is

26  larger than for any other state.  *Id.*

27        This case is similar to *Coremetrics, Inc. v. AtomicPark.com, LLC*, 370 F. Supp. 2d

28  1013 (N.D. Cal. 2005), where this Court found general jurisdiction existed because the

1   defendant's contacts taken together (described as "the economic reality of [defendant's]

2   activities") were sufficiently substantial, continuous and systematic. *Id.* at 1021, 1024.  In

3   *Coremetrics*, the defendant company maintained a highly interactive website which sold its

4   products and was accessible to California consumers, it advertised its services through the

5   Internet, and its sales to California customers were in excess of $3.3 million, or 14.71% of its

6   total sales. *Id.* at 1017-19.  The same facts exist here to support general jurisdiction over the

7   Venetian. *See also Provident Nat'l Bank v. Lehman Mgmt. Co.*, 819 F.2d 434, 436, 438 (3d Cir.

8   1987) (general jurisdiction proper where the defendant had no property in Pennsylvania, had no

9   employees, agents, mailing address, or telephone number there, had not applied to do business in

10  Pennsylvania, did no advertising in Pennsylvania, and paid no taxes there, but "the nature of

11  [defendant's] contacts with Pennsylvania … was central to the conduct of its business").

12              **b.      Defendants' Contacts Give Rise to Specific Jurisdiction.**

13              The Court can end its personal jurisdiction inquiry with the finding that general

14  jurisdiction exists over the Venetian.  But in any event, the Venetian also has sufficient

15  "minimum contacts" with California such that the Court's exercise of specific jurisdiction over it

16  comports with Due Process.  The Court may exercise specific jurisdiction if:  (1) the defendant

17  purposefully directs its activities toward the forum or a resident thereof, or purposefully avails

18  itself of the privilege of conducting activities in the forum, thereby invoking the benefits and

19  protections of its laws; (2) the claim arises out of or relates to the defendant's forum-related

20  activities; and (3) the exercise of jurisdiction is reasonable.  *See Harris Rutsky & Co. Ins. Servs.*,

21  328 F.3d at 1129.  That test is satisfied here.

22              **(1)      Purposeful Direction.**

23              The Venetian has both "purposefully availed" itself of the privilege of conducting

24  activities in the forum and "purposefully directed" its activities toward the forum.  *Menken v.*

25  *Emm*, __ F.3d __, No. 05-16467, 2007 U.S. App. LEXIS 22327, at *12 (9th Cir. Sept. 19, 2007).

26              Courts analyze whether a defendant "purposefully directs his activities" at the

27  forum state by focusing on the forum in which the defendant's actions were felt, whether or not

28  the actions themselves occurred within the forum.  *Menken,* 2007 U.S. App. LEXIS 22327, at

1   *12-13.  Specific jurisdiction may exist over a defendant that has no physical presence in the

2   forum state.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

3           First, Defendants intentionally sought a bid from Jonathan Browning, a San

4   Francisco-based corporation.  The interior design firm hired by the Venetian, Los Angeles-based

5   KNA Interior Design, contacted Jonathan Browning through Jonathan Browning's Los Angeles

6   showroom, David Sutherland, Inc.  Compl. ¶ 18.  The Venetian's buyer, Aileen Pauco,

7   purchased ten Jonathan Browning sconces through that showroom in Los Angeles.  *Id.* ¶¶ 18-19.

8   Thereafter, the Venetian directly contacted Jonathan Browning in San Francisco by fax to

9   request a bid to provide 11,368 sconces to the Venetian for use in the renovation project.  *Id.* ¶

10  19; *see also* Heithaus Decl., Ex. A, ¶ 4.

11          Moreover, after receiving the request, Jonathan Browning submitted a

12  competitive bid for the project from its San Francisco office.  Compl. ¶ 21.  The Venetian's

13  Vice-President of Purchasing then contacted Jonathan Browning, again in San Francisco, to

14  decline his bid.  *Id.* ¶ 22.  When an entity intentionally reaches beyond its boundaries to conduct

15  business with a foreign resident, the exercise of specific jurisdiction is proper.  *See Burger King*,

16  471 U.S. at 473.  A single forum state contact is sufficient to support specific personal

17  jurisdiction where, as here, the cause of action arises out of that purposeful contact.  *Menken*,

18  2007 U.S. App. LEXIS 22327, at *14.

19          Second, the Venetian's conduct was aimed at California.  An intentional act is

20  expressly aimed at the forum when "the defendant is alleged to have engaged in wrongful

21  conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."

22  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citation omitted).  The Venetian

23  solicited a bid from a California-based company through communications sent to California,

24  both in person via its agent traveling to Los Angeles and by fax and telephone to Jonathan

25  Browning's office in San Francisco.  Compl. ¶¶ 18-19.

26                  **(2)     Claims Arise Out of Forum Activities.**

27          Moreover, Plaintiff's claims arise out of the Venetian's contacts directed at this

28  forum.  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) ("but-for" test to

1   determine whether a plaintiff's claims or injuries arose out of a defendant's forum-related

2   activities).  Here, the application of this test to the present case is straightforward:  Jonathan

3   Browning would not have suffered an injury but for the Venetian's solicitation of a bid in this

4   state, its purchase of the sconces at Jonathan Browning's showroom in Los Angeles, and its

5   rejection of the bid communicated to Jonathan Browning in San Francisco.

6                              **(3)     Jurisdiction Over The Venetian Is Reasonable.**

7                Finally, jurisdiction over the Venetian is reasonable.  This determination requires

8   the consideration of several factors: (1) the extent of the defendant's purposeful interjection into

9   the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the

10  conflict with the sovereignty of the defendant's state, (4) the forum state's interest in

11  adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the

12  importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the

13  existence of an alternative forum.  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d

14  1082, 1088 (9th Cir. 2000).  Since none of the factors alone is dispositive, the Court must weigh

15  all seven factors in each case.  *See Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1132.  The

16  Venetian has the burden of demonstrating unreasonableness and must put on a "compelling

17  case."  *Burger King*, 471 U.S. at 476-77.  It has failed to do so.

18               **Factor 1:**  The Venetian has purposefully interjected itself into California through

19  large-scale advertising, and a substantial fraction of its customer base comes from California.

20  *See* RJN, Ex. A; Hixson Decl., Ex. A (fig. 69).  In addition, the Venetian purposefully interjected

21  itself into California by conducting business with California-based businesses KNA Interior

22  Designs and David Sutherland, Inc. and soliciting a bid from California-based Jonathan

23  Browning.  Compl. ¶¶ 18-19.

24               **Factor 2:**  A defendant's burden in litigating in the forum will overcome

25  jurisdiction only when the "inconvenience is so great as to constitute a deprivation of due

26  process."  *Caruth v. Int'l Psychoanalytical Assoc.*, 59 F.3d 126, 128-29 (9th Cir. 1995).  The

27  Venetian has not shown such a significant burden.  With respect to the location of the witnesses,

28  the Plaintiff's witnesses reside in California, the interior decorating firm the Venetian uses, KNA

1    Interior Design, is in Los Angeles, and the David Sutherland showroom is in Los Angeles.  Other

2    witnesses are likely in both China and Las Vegas.  Notably, the Venetian did not identify one

3    witness located in Las Vegas.  Jonathan Browning's evidence is already in this District, and

4    examples of the infringing designs could easily and inexpensively be transported to California.

5            In addition, the burden on the Venetian in defending in California is not

6    overwhelming or disproportionate given today's state of communications and transportation.  *Cf.*

7    *Dole Food Co.*, 303 F.3d at 1115 ("Modern advances in communications and transportation have

8    significantly reduced the burden of litigating in another country.").  Though Defendants may

9    suffer some inconvenience litigating in this forum, "in this era of fax machines and discount air

10   travel, requiring [the defendants] to litigate in California is not constitutionally unreasonable."

11   *Panavision*, 141 F. 3d at 1323.

12           **Factor 3:**  The extent of conflict with the sovereignty of the defendant's state is

13   not applicable here because the Defendants are not foreign nationals.  *See Sinatra v. Nat'l*

14   *Enquirer, Inc.*, 854 F.2d 1191, 1199-2000 (9th Cir. 1988).

15           **Factor 4:**  California has a clear and compelling interest in providing a

16   convenient forum for its residents to seek redress of a harm caused by an out-of-state defendant.

17   The Venetian concedes this factor favors California.  Mot. to Dismiss at 7:6.

18           **Factor 5:**  California is the most efficient forum to hear this case.  In evaluating

19   this factor, courts look primarily at where the witnesses and the evidence are likely to be located.

20   *Menken*, 2007 U.S. App. LEXIS 22327, at *22.  As discussed above in factor 2, that is

21   California.  Again, the Venetian has not identified any witnesses located in Las Vegas.

22           **Factor 6:**  Upholding jurisdiction in California will allow Plaintiff to receive

23   convenient and effective relief.  As discussed above, many of the witnesses reside in California.

24   And the Venetian's employees are "party" witnesses, so the geographic limitations on

25   depositions for non-party witnesses in Fed. R. Civ. Proc. 45(c)(3)(A)(ii) are inapplicable.

26           **Factor 7:**  The mere existence of an alternative forum in Las Vegas does not

27   satisfy the Venetian's burden to present a compelling case that jurisdiction is unreasonable.  *See*

28   *Myers*, 238 F.3d at 1075.

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    On balance, Defendants have not presented a compelling case that the exercise of

2    jurisdiction would be unreasonable.  *See Panavision Int'l, L.P.*, 141 F.3d at 1324 ("[A]lthough

3    some factors weigh in [defendant's] favor, he failed to present a compelling case that the district

4    court's exercise of jurisdiction in California would be unreasonable.").

5              c.        **The Court Has Jurisdiction Over The Holding Companies.**

6    Next, Defendants assert that the Court lacks personal jurisdiction over the Las

7    Vegas Sands holding companies.  That too is mistaken.  A parent company's relationship with its

8    subsidiary may confer personal jurisdiction over the parent if the subsidiary is acting as the

9    parent company's alter ego "so as to justify disregard of the corporate entity."  *Flynt Distrib. Co.*

10   *v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984).  Here, Jonathan Browning alleges that the Las

11   Vegas Sands holding companies are simply alter egos of the Venetian.  Compl. ¶ 9.  Notably,

12   Defendants do not dispute this.  Nor do they submit any evidence to the contrary.

13   At this stage, Jonathan Browning has pled a *prima facie* case sufficient to

14   establish personal jurisdiction.  In the event the Court believes an additional showing must be

15   made at the pleading stage, Jonathan Browning requests that it be given leave to conduct limited,

16   pre-ruling jurisdictional discovery.  "If the district court concludes that the existing record is

17   insufficient to support personal jurisdiction, [plaintiff] is entitled to jurisdictional discovery."

18   *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.,* 395 F.3d 1275, 1283 (Fed. Cir. 2005).

19        **B.        Venue Is Proper in This District.**

20   The Venetian's challenge to venue is also without merit.  The Northern District of

21   California is a proper venue for this suit.  Venue is proper under the Copyright Act and 28 U.S.C.

22   § 1391, and transfer to the District of Nevada is inappropriate.

23             **1.        Venue Is Proper Under 28 U.S.C. § 1400(a).**

24   Civil actions arising under federal copyright law may be brought in "the district in

25   which the defendant or his agent resides or may be found."  28 U.S.C. § 1400(a).  "The Ninth

26   Circuit has held that under this section, venue is proper 'in any judicial district in which the

27   defendant would be amenable to personal jurisdiction if the district were a separate state.'"

28   *Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1094 (N.D. Cal. 2003) (citations

1   omitted).  Venue is proper here because the Venetian has substantial contacts with this District

2   giving rise to personal jurisdiction over it, as set forth above in Section III.A.2, above.

3        **2.**      **Venue Is Proper Under 28 U.S.C. § 1391(b)(2).**

4        Venue is also appropriate in the Northern District of California because it is "a

5   judicial district in which a substantial part of the events or omissions giving rise to the claim

6   occurred, or a substantial part of the property that is the subject of the action is situated."  28

7   U.S.C. § 1391(b)(2).  A "prima facie showing of proper venue is sufficient to defeat a motion to

8   dismiss."  *Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D. Cal.

9   2000).  Section 1391(b)(2) does not require that a majority of the "events or omissions" occur in

10  the district where the suit is filed, nor that the events there predominate.  *Rodriguez v. Cal. Hwy.*

11  *Patrol*, 89 F. Supp. 2d 1131, 1136  (N.D. Cal. 2000); *see also Kelly v. Qualitest Pharms., Inc.*,

12  No. CIV-F-06-116, 2006 U.S. Dist. LEXIS 65814, at *25 (E.D. Cal. Aug. 31, 2006).  Plaintiff

13  need only allege that a "substantial part" of the events at issue involve the Northern District.

14  *Rodriguez*, 89 F. Supp. 2d at 1136.

15       Congress eliminated the "where the claim arose" standard in 1990, thereby

16  nullifying the "best" venue approach and "broadening" where plaintiffs may bring suit.  *See*

17  *Globe Glass & Mirror Co. v. Brown*, 888 F. Supp. 768, 770 (E.D. La. 1995); *First of Mich.*

18  *Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).  Thus, the Venetian's statement that "a

19  substantial part of the events or omissions giving rise to the claim . . . occurred outside of

20  Northern District of California" is misplaced.  Mot. to Dismiss at 9:16-17.  Further, its emphasis

21  on acts or omissions in Los Angeles, Nevada and China (Mot. to Dismiss at 9:18-19), while

22  perhaps also justifying venue there, does not undermine the independent propriety of venue in

23  the Northern District of California.  Indeed, the 1990 amendments were specifically meant to

24  eliminate the sort of "wasteful litigation" over best venue that Defendants are pursuing here.

25  *Uffner v. La Reunion Francaise*, 244 F.3d 38, 42 (1st Cir. 2001) (citing decisions).

26       Venue is proper here because:  (1) the Venetian solicited the bid from Jonathan

27  Browning by sending its request for a bid to Plaintiff in this District; (2) the bid was sent from

28  this District; (3) the sconce designs at issue in this case were created in this District; (4) the terms

1    of the bid provided for the Venetian to take title to the sconces in this District; and (5) the

2    financial injury resulting from the Venetian's conduct will be felt in this District where Plaintiff

3    is incorporated and its two owners reside.  Compl. ¶¶ 13, 19, 21.  A "defendant's intentional acts

4    directed towards [the Northern District], where the harm was principally suffered, mean[s] a

5    substantial part of the events giving rise to the litigation occurred [there]."  *Sebastian Int'l, Inc. v.*

6    *Russolillo*, No. 00-03476, 2000 U.S. Dist. LEXIS 21510, at *19 (C.D. Cal. Aug. 25, 2000); *see*

7    *also Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1296, 1301 (C.D. Cal. 1996)

8    (upholding venue where the defendant's actions "were expressly aimed at [plaintiff in] California

9    and which caused harm"), *aff'd* 141 F.3d 1316 (9th Cir. 1998).

10            **3.      Transfer To Las Vegas Is Not Appropriate.**

11            Defendants move, in the alternative, to transfer the case to the District of Nevada,

12    pursuant to 28 U.S.C. § 1404(a).  This case should not be transferred to a different forum.

13            To support a motion for transfer under § 1404(a), the moving party must establish

14    (1) that the case "might have been brought" in the other district, and (2) that transferring the case

15    is "for the convenience of the parties and witnesses, [and] in the interests of justice."  28 U.S.C.

16    § 1404(a).  To prevail, the moving party must present admissible evidence of the facts supporting

17    its motion; conclusory statements are not sufficient.  *See Cochran v. NYP Holdings, Inc.*, 58 F.

18    Supp. 2d 1113, 1119 (C.D. Cal. 1998) (moving party has "heavy burden" of demonstrating,

19    "through affidavits or declarations containing admissible evidence," that transfer is warranted).

20            Although Plaintiff does not contest that the action "might have been brought" in

21    Nevada because Defendants are subject to personal jurisdiction there, Defendants cannot meet

22    the second prong of the test because they have not shown that the District of Nevada is a more

23    convenient forum.  A court will not transfer a case unless the "convenience" and "justice" factors

24    tip strongly in favor of transfer.  *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086,

25    1092 (N.D. Cal. 2002).  That is not the case here.

26            Here, Jonathan Browning is a resident of this District.  Transfer to Nevada is not

27    appropriate simply to make it more convenient for the Venetian.  *Shropshire*, 294 F. Supp. 2d at

28    1095 (rejecting transfer because witnesses resided in both districts and inconvenience to plaintiff

1    in the new district was "about the same" as that of the defendant in the Northern District).

2          With respect to claims of inconvenience of key witnesses, Defendants have failed

3    to make a sufficient showing. To prove that a transfer would be more convenient for witnesses,

4    the Venetian must present admissible evidence as to (1) the identity of the witnesses; (2) where

5    they live; (3) what their testimony will be; and (4) why that testimony is relevant or necessary.

6    *See Cochran*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998) ("Rather than relying on 'vague

7    generalizations' of inconvenience, the moving party must demonstrate, through affidavits or

8    declarations containing admissible evidence, who the key witnesses will be and what their

9    testimony will generally include."); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108 (N.D. Cal.

10    2001) ("To demonstrate the inconvenience of witnesses, the moving party must identify relevant

11    witnesses, state their location and describe their testimony and its relevance.").

12          The Venetian has done none of that. The Venetian asserts that "a large proportion

13    of witness [*sic*] in this action will be employees of Defendants, who are domiciled in Nevada."

14    Mot. to Dismiss at 11:24-25. Yet, the Venetian does not identify a single witness, much less the

15    substance of any testimony. Defendants' unsupported supposition as to the convenience of

16    unidentified witnesses is insufficient. *See Williams*, 157 F. Supp. 2d at 1108; *Cochran*, 58 F.

17    Supp. 2d at 1119. Significantly, the Venetian does not assert that its witnesses would be unable

18    to travel to California to defend the suit here.

19          The additional eight factors identified in *Jones v. GNC Franchising, Inc.*, 211

20    F.3d 495, 299 (9th Cir. 2000), considered individually and collectively, also weigh in favor of

21    maintaining the action here and against a transfer to Nevada. The relevant contract negotiations

22    occurred with Jonathan Browning's San Francisco office, located in this District. A California

23    court is more familiar with California law than a Nevada court is. As explained above in the

24    discussion of personal jurisdiction, the Venetian has substantial contacts with the forum, both

25    generally and with reference to this case. The Venetian has not established, with specific

26    evidence, that the cost of litigating in this District is disproportionate. *See Am. Eagle Outfitters,*

27    *Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) ("where proof of such

28    disparity is not adequately provided, or does not exist, this is not a significant factor to be

1  considered"). Plaintiff's witnesses are located here and in Los Angeles. The Venetian identifies

2  no witnesses in Las Vegas, who in any event would be party witnesses whose testimony can be

3  compelled here.

4          C.      **Plaintiff Has Properly Pled Implied Contract Claims.**

5                  Turning to the merits, the Venetian asserts that Jonathan Browning's implied

6  contract and unjust enrichment claims should be dismissed. The Venetian is wrong.

7                  Jonathan Browning's implied contract claims are straightforward: In the relevant

8  industry, when a purchaser solicits and receives a bid, the bid constitutes an offer to sell at a

9  particular price. The purchaser is free to decline the bid – but if it uses the design that was

10  offered, that is a *de facto* acceptance, obligating the purchaser to pay the offered price. Here, the

11  Venetian did that. Compl. ¶¶ 87-88, 91, 94. This claim is no different from arguing that if

12  someone walks into a store and steals a product off a shelf, he becomes contractually obligated to

13  pay for it. The product on a shelf with a price tag is an offer to sell; taking it is acceptance.

14                  The facts in this case resemble those in *Desny v. Wilder,* 46 Cal. 2d 715 (1956),

15  where the California Supreme Court found that an implied contract could be inferred from the

16  disclosure of an idea to a movie studio, which then used that idea without compensating the

17  idea's originator. *Id.* at 734-39. The Court held that "if the idea purveyor has clearly

18  conditioned his offer to convey the idea upon an obligation to pay for it if it is used by the

19  offeree and the offeree, knowing the condition before he knows the idea, voluntarily accepts its

20  disclosure . . . the law will either apply the objective test . . . and hold that the parties have made

21  an express (sometimes called implied-in-fact) contract, or under those circumstances, as some

22  writers view it, the law itself, to prevent fraud and unjust enrichment, will imply a promise to

23  compensate." *Id.* at 739. Here, that is what Jonathan Browning has alleged. Compl. ¶¶ 86-95.[1]

24  _____

25  [1]        At the pleading stage, Jonathan Browning has alleged this same theory in three different
26  causes of action: implied-in-fact contract, implied-in-law contract, and unjust enrichment.
    Compl. ¶¶ 86-95. The latter two doctrines are broad enough to encompass this implied contract
27  claim. All three claims rest on the same theory. Compl. ¶¶ 87-88, 91, 94. *Desny* makes clear
    that all three claims are valid under California law. *Desny*, 46 Cal. 2d at 739.

28

1      **D.      Plaintiff Has Stated Claims Against the Holding Companies.**

2              Next, the Venetian contends that the claims against the Las Vegas Sands holding

3      companies should be dismissed because "Plaintiff has not stated a single fact to support a

4      cognizable claim" against them.  Mot. to Dismiss at 13:21-22.  That is wrong.  Jonathan

5      Browning alleges that the holding companies are alter egos of the Venetian.  Compl. ¶ 9.

6              Under California law, "[w]ith increasing frequency, courts have demonstrated a

7      readiness to disregard the corporate entity when a wholly owned subsidiary is merely a conduit

8      for, or is financially dependent on, a parent corporation."  *Institute of Veterinary Pathology, Inc.*

9      *v. Cal. Health Labs., Inc.*, 116 Cal. App. 3d 111, 119 (1981).  Courts disregard the corporate

10     entity when there is unity of interest and ownership between the corporate entities such that the

11     separate personalities of the entities are indistinguishable, and that an inequitable result will

12     occur if the entities are treated separately.  *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235

13     Cal. App. 3d 1220, 1249-1250 (1991).  Here Jonathan Browning has alleged that the Venetian,

14     Las Vegas Sands, LLC and Las Vegas Sands Corp. are agents and alter egos of each other.

15     Compl. ¶ 9.  Plaintiff has sufficiently pled its claims against all Defendants.

16     **E.      The Copyright Act Does Not Preempt Plaintiff's California Law Claims.**

17             Finally, the Venetian argues that the Copyright Act preempts Jonathan

18     Browning's state law claims.  That is incorrect.  The Copyright Act preempts state law claims

19     only if (1) the work falls under the general subject matter of the Copyright Act and (2) the rights

20     the plaintiff asserts under state law are equivalent to those provided by the Copyright Act.  *See*

21     17 U.S.C. § 301(a).  Jonathan Browning does not dispute that the Trianon and Ledoux sconces

22     fall under the subject matter of the Copyright Act, and indeed alleges that they are copyrighted

23     works.  Compl. ¶¶ 27, 29.  However, the second prong of the preemption test is not satisfied.

24             To determine whether Jonathan Browning's state law claims provide greater

25     rights than those provided by the Copyright Act, the Court must determine whether the claims

26     contain elements that are not shared by the Copyright Act and whose presence makes the claims

27     qualitatively different from copyright claims.  *Summit Mach. Tool Mfg. Corp. v. Victor CNC*

28     *Sys., Inc.*, 7 F.3d 1434, 1439-40 (9th Cir. 1993).  They do.

1    **Unfair Competition.**  California's unfair competition law covers conduct that is

2    independent from and outside the scope of the Copyright Act.  The UCL generally prohibits

3    business practices that are unfair, unlawful or fraudulent.  *See Cel-Tech Commc'ns, Inc. v. Los*

4    *Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Conduct that is tortious under state law

5    is unfair and unlawful within the meaning of the UCL.  *See, e.g. Charles J. Vacanti, M.D., Inc. v.*

6    *State Comp. Ins. Fund*, 24 Cal. 4th 800, 827-28 (2001).  Deceptive business acts or practices also

7    violate the UCL.  *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499, 520 (1997).

8    Jonathan Browning's claims under the UCL have a legal basis that is independent

9    of the Copyright Act.  Jonathan Browning's claim of unfair competition is based in part on the

10   Venetian's unfair and tortious conduct in interfering with Jonathan Browning's contractual

11   relationship with its sconce manufacturer, Diamond Life.  Compl. ¶ 75 (relying on ¶¶ 20, 32,

12   among others).  Similarly, Jonathan Browning's claim of fraudulent competition is based in part

13   on the Venetian's deceptive conduct in its sham bid solicitation process by soliciting a bid from

14   Jonathan Browning under false pretenses.  Compl. ¶ 79 (relying on ¶¶ 3, 18-19, 22-26, among

15   others).  Those are valid, non-preempted applications of the UCL.  Assuming for the sake of

16   argument that copyright preemption would bar some applications of the UCL on the facts of this

17   case, that is insufficient to dismiss an entire claim at the pleading stage.

18   **Implied Contract.**  Jonathan Browning's breach of implied contract claims are

19   also not preempted by the Copyright Act.  For breach of contract claims where there is a promise

20   to pay for the use of work under the subject matter of copyright, an extra element exists to

21   prevent preemption.  *See Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1127-28

22   (N.D. Cal. 2001) ("[A] state law creating a cause of action for the breach of an implied-in-fact

23   contract is not abridged by an act which in and of itself would infringe one of the exclusive rights

24   granted by § 106 [of the Copyright Act], since the right to be paid for the use of the work is not

25   one of those rights.").

26   IV.    **CONCLUSION**

27   For the foregoing reasons, Defendants' motion to dismiss should be denied.

28

1    DATED:  October 3, 2007

2
                                    BINGHAM McCUTCHEN LLP
3

4

5                                   By:_____/s/ Thomas S. Hixson_____
                                              Thomas S. Hixson
6                                           Attorneys for Plaintiff
                                        JONATHAN BROWNING, INC.
7
     DATED:  October 3, 2007
8

9                                   DOLL AMIR & ELEY LLP

10

11
                                    By:_____/s/ Gregory L. Doll_____
12                                            Gregory L. Doll
                                            Attorneys for Plaintiff
13                                      JONATHAN BROWNING, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72216517.10/3006638-0000326553                    17                    CASE NO.: C 07-3983 JSW

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS