United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BROWNING, INC., | |
| Plaintiff, | No. C 07-3983 JSW |
| v. | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |
| VENETIAN CASINO RESORT, LLC; LAS VEGAS SANDS, LLC; LAS VEGAS SANDS CORPORATION; and DOES 1-100, | |
| Defendants. | |

Now before the Court are motions to dismiss filed by Defendant Venetian Casino Resort, LLC (the "Venetian"), Las Vegas Sands LLC, and Las Vegas Sands Corporation. Having considered the parties' pleadings, relevant legal authority, and the record in this case, the Court DENIES IN PART and GRANTS IN PART the Defendants' motion to dismiss.

**BACKGROUND**

Jonathan Browning, Inc. ("Browning") is a California corporation with its principal place of business in San Francisco. (Compl. ¶ 5.) Browning designs, produces, and sells high-end decorative interior lighting fixtures, known as sconces, through exclusive showrooms throughout the United States. (*Id*.) The Venetian owns hospitality properties worldwide. The Venetian Casino Resort and the Las Vegas Sands are limited liability companies. The Las

1  Vegas Sands Corporation is a Nevada corporation. All three defendants have their principal
2  places of business in Nevada. (*Id*. ¶¶ 6-8.)
3        This action arises from the Venetian's alleged unauthorized reproduction and display of
4  thousands of Browning's sconces in its Las Vegas Casino Resort. According to the complaint,
5  around April 20, 2006, the Venetian's Los Angeles-based interior designer, KNA Interior
6  Design, purchased ten of Browning's sconces from the Los Angeles showroom David
7  Sutherland Inc. (*Id*. ¶ 18.) Ms. Pauco, a KNA Interior Design employee, contacted Browning
8  at its San Francisco office and requested a bid for over 11,000 sconces for use in the Venetian
9  resort renovation project. (*Id*.) On or about September 7, 2006, Browning submitted a bid to
10 the Venetian offering to provide 11,368 sconces. (*Id.* ¶ 21.) Browning was able to offer a
11 competitive price because it had discovered a Chinese manufacturing company, Diamond Life
12 Lighting Manufacturing (H.K.) Ltd. ("Diamond Life"), which could meet Browning's standards
13 for high quality and price goals. (*Id*. ¶ 20.) Shortly thereafter, the Venetian rejected
14 Browning's bid as being "out of the ballpark" and discontinued negotiations with Browning.
15 (*Id*. ¶ 22.) Browning asked the Venetian and KNA Interior Design what light fixtures were
16 chosen over Browning's work. (*Id*. ¶ 23.) Those requests for information were denied. (*Id*.)
17       On or about May 21, 2007, Mr. Browning, co-owner of Jonathan Browning, Inc.,
18 received a telephone call from a designer at a San Francisco-based interior firm, who at the time
19 was a guest at the Venetian Casino Resort in Las Vegas. (*Id*. ¶ 24.) The designer called to
20 congratulate Mr. Browning on having his sconces installed at the Venetian property. (*Id*.)
21 Approximately ten days later, Mr. Browning visited the same Venetian Resort in Las Vegas.
22 (*Id*. ¶ 25.) He was astonished to find nearly identical, unauthorized copies of his sconces on the
23 walls of the Venetian's renovated rooms and corridors. (*Id*. ¶ 26.) Browning alleges that the
24 Venetian used deceptive and unfair practices to identify and enter into a contract with Diamond
25 Life to produce more than thirteen thousand nearly identical copies of the sconces without
26 Browning's knowledge or permission. (*Id*. ¶ 32.) Because various Venetian properties are
27 either undergoing construction or renovation, Browning believes that the Venetian plans to
28 reproduce and display additional infringing copies of his works in those properties. (*Id*. ¶ 37.)

2

Browning asserts that the Venetian's actions have violated the Copyright Act as well as various state laws. (*Id.* ¶ 17.)

Now before the Court is the Venetian's motion to dismiss Browning's complaint in its entirety under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Federal Rule of Civil Procedure12(b)(3) for improper venue or alternatively to transfer venue under 28 U.S.C. § 1406(a) or § 1404(a). The Venetian also moves to strike the declarations of Marco Heithaus and Thomas S. Hixson. The Venetian also moves to dismiss count ten for implied contract, counts nine and eleven for implied in law and quasi-contract/unjust enrichment, and counts six and seven for unfair competition under California Business and Professions Code § 17200 arguing both that the state law claims independently fail to state a cause of action and because they are preempted by copyright law. Finally, the Venetian moves to dismiss all claims against the Las Vegas Sands LLC and the Las Vegas Sands Corporation for failure to state a claim against them.

**ANALYSIS**

**A.     The Northern District Has Subject Matter Jurisdiction Over Browning's Claims.**

The Venetian asserts that Browning has failed to satisfy the jurisdictional prerequisites necessary to initiate a copyright infringement action. When a defendant moves to dismiss a complaint for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). The Copyright Act states in relevant part that:

> [W]here the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form, and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights . . .[T]he Register's failure to become a party shall not deprive the court of jurisdiction to determine the issue.

17 U.S.C.§ 411(a). "Registration is not a prerequisite to a valid copyright, although it is a prerequisite to a suit." *S.O.S., Inc. v. Payday Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989) (citing 17 U.S.C. §§ 408 (a), 411). Because the Copyright Act is silent regarding the pleading

3

requirements for registration compliance, allegations of copyright infringement "must satisfy only the minimal notice-pleading requirements of Federal Rule of Civil Procedure 8." *Arista Records LLC v. Greubel*, 453 F. Supp. 2d. 961, 964 (N.D. Tex. 2006); *see also Stewart v. Wachowski*, 2004 WL 2980783, *5 n.32 (C.D. Cal. 2004) ("[A]llegations of copyright infringement are governed by Rule 8(a) rather than Rule 9(b)."). Browning alleges that it satisfied the statutory preconditions to sue under 17 U.S.C. § 411(a). Browning applied for and was refused a copyright for its designs. Marco Heithaus, co-owner of Jonathan Browning, Inc., provided a declaration indicating that Browning took action to register its designs and that a rejection letter was received. The Venetian submitted evidentiary objections to Mr. Heithius' declaration based on lack of personal knowledge, hearsay, relevancy, and the best evidence rule. Mr. Heithius made a sworn declaration, based on his personal knowledge, that Browning complied with the registration requirement. The declaration is offered to prove that the application, deposit, and fee were delivered to the Copyright Office and is not offered to prove the contents of the items delivered. The Court finds that Mr. Heithaus has the requisite personal knowledge and familiarity with his organization's records to make such a declaration. The Court overrules the Venetian's evidentiary objections and DENIES the motion to strike. Accordingly, the Court finds that Browning has adequately alleged that it complied with the pre-registration requirements under 17 U.S.C. § 411(a). The Court has subject matter jurisdiction over Browning's copyright infringement claim.

**B.    The Court Has Personal Jurisdiction Over the Venetian.**

The Venetian asserts that this Court does not have personal jurisdiction over it. "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1376-77 (1998); *cf.*, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). Because California's long-arm statute "is co-extensive with federal due process requirements, the jurisdictional analysis" under California law and federal due process is the same. *Schwarzenegger*, 374 F.3d at 801; *3D Systems*, 160 F.3d at 1377. Due process requires that a

4

1 defendant have "minimum contacts with the forum state such that the exercise of personal
2 jurisdiction does not offend traditional notions of fair play and substantial justice." *Decker*
3 *Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986) (citing *International*
4 *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Minimum contacts encompasses two types
5 of jurisdiction: general and specific.

### 1. This Court does not have general jurisdiction over the Venetian.

The Venetian asserts that this District does not have general jurisdiction over it.  If the defendant has "substantial" or "continuous or systematic" contacts with the forum state, the defendant is subject to general jurisdiction.  *Id.* (quoting *Data Disc, Inc. v. Systems Technology Associates*, 557 F.2d 1280, 1287 (9th Cir. 1977)).  The standard for general jurisdiction is high and requires that the contacts in the forum "approximate physical presence."  *Tuazon v. R.J. Reynolds Tobacco Co.*, 42 F.3d 1163, 1169 (9th Cir. 2006).  Browning argues that the Venetian's advertising and marketing scheme in California, the Venetian's website, and the large percentage of Californian customers are sufficient contacts to establish general jurisdiction over the Venetian.  (Compl. ¶ 6.)  These contacts do not approximate physical presence in this district and do not meet the high standard of general jurisdiction.  *See Cubbage v. Merchant,* 744 F.2d 665, 667-68 (9th Cir. 1984) (finding no general jurisdiction over out-of-state doctors where 26% of their patients were California residents, they were reimbursed through the State of California medical insurance program, and they advertised in the California yellow pages); *see also Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242-43 (9th Cir. 1984) (a foreign corporation's sales and marketing efforts, order solicitation through trade shows and the mail, and attending trade shows and meetings in the state were insufficient contacts to establish general jurisdiction).  Meanwhile, there is no dispute that the Venetian's principal place of business is Nevada. (Br. at 5.)  The Venetian maintains that it does not own any property, has no bank accounts, pays no taxes, has no offices, employees or agents and has no registered agent for service of process in California.  (*See* Declaration of Franklin H. Levy,

5

¶¶ 4-9.) Thus, the Venetian's contacts are not sufficient for Browning to meet its *prima facie* burden of showing that general jurisdiction is proper over the Venetian in this district.[1]

### 2. This Court has specific jurisdiction over the Venetian.

Browning asserts that specific jurisdiction exists over the Venetian as a result of conduct allegedly directed at Browning and within this forum. Specific jurisdiction exists where "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Bancroft & Masters Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Fred Martin Motor Co.*, 374 F.3d at 802 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

Browning's claims center on the Venetian's unauthorized reproduction of Browning's sconce designs. Because there are tort claims involved, the Court can analyze the first prong through the *Calder* effects test. *Id.*; *see also Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001). The effects test requires the defendant to have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knows is likely to be suffered in the forum state. *Bancroft & Masters Inc.*, 223 F.3d at 1087.

The Venetian acted intentionally when it contacted Browning in San Francisco, and solicited and then rejected a bid for over eleven thousand sconces. (Compl. ¶12.) The Venetian's actions were expressly aimed at California because the Venetian knew that Browning was a California company. *See Bancroft & Masters Inc.*, 223 F.3d at 1087 (The "express aiming" requirement is met when "the defendant knows the plaintiff to be a resident of the form state."). Finally, the Venetian knew its actions of reproducing the sconces would be

---

[1] On August 2, 2007, the Venetian filed an evidentiary objection and a motion to strike Thomas S. Hixson's declaration on the basis of authentication, relevancy, and hearsay. Because the Court finds that the contacts at issue in the declaration do not constitute general jurisdiction over the Venetian, even if admissible as evidence, the Court finds that it does not need to rule on the Venetian's motion to strike.

6

felt in the California, as Browning creates its designs in California. (Compl. ¶13.) Browning has demonstrated that the Venetian purposefully availed itself under the *Calder* effects test.

The second prong requires that the Venetian's contacts must "give rise to the current suit," which is measured by a "but for" causation test. *Bancroft & Masters Inc.*, 223 F.3d at 1088. Browning must show that "but for" the Venetian's forum related contacts, the alleged injury would not have occurred. This requirement is met here. But for the Venetian soliciting and rejecting Browning's bid, which resulted in the Venetian identifying and contracting with Browning's manufacturer to reproduce Browning's sconce designs, Browning would not have been harmed. The Venetian's contacts with Browning properly give rise to the current suit. Accordingly, the Court concludes Browning has set forth a *prima facie* showing of personal jurisdiction over the Venetian.

Under the third prong, the Venetian must demonstrate that exercising jurisdiction would be unreasonable. To that end, the Court considers the following factors: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id*. (citing *Burger King Corp.*, 471 U.S. at 476.

First, because "purposeful interjection is analogous to the purposeful direction analysis," the Court finds this factor neutral. *Sinatra v. National Enquirer Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988); citing *Corporate Inv. Business Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir. 1987) ("Ninth Circuit cases give the 'purposeful interjection' no weight once it is shown that the defendant purposefully directed its activities to the forum state."). Second, the Venetian does not make a strong showing that the burden to defend in California would be substantial. Nevada is geographically located near California and "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *Menken v. EMM*, 2007 U.S. App. LEXIS 22327 (9th Cir. 2007)

(citation omitted). Thus, this factor weighs in favor of Browning. Third, conflict with the sovereignty of a defendant's state bears no weight here because this case does not involve a foreign state, which presents a higher sovereignty barrier than that between two states such as California and Nevada. *See Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1272 (9th Cir. 1981). Fourth, because neither party disputes that California maintains a strong interest in providing redress for its residents, who were harmed by an out-of-state defendant, this factor favors Browning. Fifth, because both California and Nevada have witnesses and evidence, it is unclear which forum has an efficiency advantage. This factor is neutral. Sixth, although maintenance of a suit outside California may be inconvenient and costly for Browning, this factor is not given as much weight and is also neutral. Seventh, Browning implicitly concedes that suit could have been brought in Nevada. This factor favors the Venetian. Balancing these factors, the Venetian has not made a "compelling case" that the exercise of jurisdiction would be unreasonable. *See Fred Martin Motor Co.*, 374 F.3d at 802. The Court finds that exercising jurisdiction over the Venetian is reasonable.

**C.     The Northern District of California is a Proper Venue.**

The Venetian argues that the Northern District of California is an improper venue. Civil actions arising under federal copyright laws may be brought "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The "may be found" clause has been interpreted to mean that a defendant is amenable to personal jurisdiction in a particular forum based on realistic "contacts" with that forum. A corporation resides in any jurisdictional district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). Here, the Venetian is a corporation that resides in this district because personal jurisdiction has been established based on the Venetian's multiple contacts with Browning in California. Thus, venue is proper under 28 U.S.C. § 1400(a).

The general venue statute states that venue is proper in a district if a "substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). The Venetian solicited a bid from Browning in this district, the sconces were designed in this district, the bid provided

8

for the Venetian to take title to the sconces here, and the financial injury from the Venetian's conduct will be felt in this district where Browning resides. Thus, venue is also proper under 28 U.S.C. § 1391(b).

**D.     The Interests of Justice Do Not Favor Transfer to the District of Nevada.**

In the alternative, the Venetian argues that this action should be transferred to the District of Nevada. A district court has discretion to "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). In order for a district court to transfer an action under 28 U.S.C. § 1404, the Court must find that: (1) the transferee court is one where the action "might have been brought," and (2) that the convenience of the parties and witnesses and the interest of justice favor transfer. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). There is no dispute that Browning could have brought this action in the District of Nevada. Therefore, the Venetian has met its burden under the first part of the test.

To determine whether the Venetian satisfied the second portion of the test, the Court considers the following factors: (1) Plaintiff's choice of forum; (2) convenience of the parties and witnesses; (3) ease of access to sources of proof; (4) local interest in the controversy; (5) familiarity of each forum with applicable law; and (6) relative congestion in each forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947)).

Typically a court should give a plaintiff's choice of forum great deference unless the defendant can show that other factors of convenience clearly outweigh the plaintiff's choice of forum. *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005) ("Where venue is governed by a more permissive standard, a plaintiff's choice is entitled to greater deference as a matter of law.") Browning is located in San Francisco and conducts its design work from its San Francisco office. Therefore, Browning's choice of forum is favored.

The Court also considers the relative convenience to all the parties and their witnesses. *See Decker Coal Co.*, 805 F.2d at 483 (citing *Gulf Oil Corp.*, 330 U.S. at 508). The Venetian argues that the District of Nevada is a more convenient forum because several employee

9

witnesses are located in Nevada. This inconvenience is given little weight as the Venetian will be able to compel their employees' testimony at trial. *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1998) (discounting the convenience to the defendant's employees because they could be compelled to testify.) This factor does not favor transfer. Access to evidence may also favor transfer. *Decker Coal Co.*, 805 F.2d at 843 (citing *Gulf Oil Co.*, 330 U.S. at 508). The Venetian argues that the alleged copies of the sconces are located in Las Vegas. Although this factor weighs in favor of transfer, the Court does not weigh it heavily. The local interest in having localized controversies decided at home is also considered. *Id*. California has a strong public interest in deciding controversies involving its citizens. *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 771 (9th Cir. 1991) (finding that California has an interest in having its citizens compensated for torts committed against them.) Because Browning resides in the Northern District of California, California's interest in protecting its citizens prevails. Thus, this factor favors Browning. Browning has brought California state law claims. The Northern District of California is more familiar with the relevant California state laws that govern the state claims. This factor does not favor transfer to the District of Nevada. Overall, the Venetian must make a strong showing of inconvenience to upset Browning's choice of forum. The Court finds that the Venetian has failed to carry its heavy burden of establishing the inconvenience of litigating in this forum and DENIES its motion to transfer.

**E.      Browning Has Not Stated a Claim For Breach of an Implied Contract.**

The Venetian moves to dismiss Browning's tenth claim for implied contract for failure to state a cognizable legal theory or state a claim under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss is proper under Rule12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). A court may dismiss a complaint under Rule 12(b)(6), based on the "lack of a cognizable legal theory" or based upon the "absence of

10

1  sufficient facts alleged under a cognizable legal theory." *Balestreri v. Pacifica Police Dep't*,
2  901 F.2d 696, 699 (9th Cir. 1988).

3       The complaint is construed in the light most favorable to the non-moving party and all
4  material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478,
5  481 (9th Cir. 1986). A court, however, is not required to accept legal conclusions cast in the
6  form of factual allegations, if those conclusions cannot reasonably be drawn from the facts
7  alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing
8  *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). As a general rule, "a district court may not
9  consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v.*
10 *Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County*
11 *of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002).

12      An implied contract (*i.e.* implied-in-fact contract) is an agreement that is manifested by
13 the parties' conduct "in light of the surrounding circumstances [and] their tacit understanding."
14 *Moreno v. Los Angeles Child Care and Development Council, Inc.*, 963 F. Supp. 876, 879 (1997)
15 (quoting *Baltimore & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923)); *see also* Cal. Civ.
16 Code § 1621. In *Grosso v. Miramax Film Corporation*, the plaintiff alleged a breach of an
17 implied contract claim against a film company for producing a movie that "stole the ideas and
18 themes of his work." 383 F.3d 965, 967 (9th Cir. 2004). The plaintiff sought compensation "not
19 for the actual written script, but for the idea allegedly embodied in the script and shared with
20 Miramax." *Id*. The court held that the plaintiff had alleged an implied contract based on
21 providing the company with an idea. *Id*. The court relied on *Desny v.Wilder*, in which the
22 California Supreme Court held that the plaintiff was entitled to a trial because the defendant
23 allegedly entered into an implied contract that began when the plaintiff telephoned the
24 defendant's office and pitched a movie idea to the defendant's secretary. 46 Cal. 2d 736, 746
25 (1956). The plaintiff later submitted a movie synopsis from which the defendant allegedly
26 produced a film and failed to compensate the plaintiff. *Id*. Similarly, Browning relies on *Desny*
27 and seeks compensation for its design ideas which were embodied in the sconces that the
28 Venetian replicated. Browning alleges that the Venetian agreed to pay Browning for the value of

11

sconce copies if it used Browning's designs which were proposed in the bid.  Thus, the Court finds that Browning's claims are based on a cognizable legal theory.

The Venetian also asserts that Browning has not stated sufficient facts to support an implied contract claim.  "The law will not imply a promise to pay for an idea from the mere fact that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue." *Desny,* 46 Cal. 2d at 738-39.  "To establish a *Desny* claim for breach of implied-in-fact contract, the plaintiff must show that the plaintiff prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of work." *Grosso*, 383 F.3d at 965 (citing *Faris v. Enberg*, 97 Cal. App. 3d 309, 318 (1979)).  Moreover, a contract is "effective only between the contracting parties; it does not withdraw the idea from general circulation." *Rokos v. Peck*, 182 Cal. App. 3d 604, 614 (1986).  Although a disclosed idea may be "widely known, the idea may be protected by an express contract providing that it will be paid for regardless of its lack of novelty." *Id*.

Despite the existence of a cognizable legal theory, Browning does not allege facts sufficient to support a claim that an implied contract existed between the parties.  Browning's design ideas had been conveyed to the Venetian and to the general public prior to submitting its bid to the Venetian.  Browning's work was profiled in numerous design magazines and newspapers and commissioned by famous institutions.  (Compl. ¶ 15.)  Browning described in various publications his creative design processes for his signature lighting collection.  (*Id*. ¶ 16.)  Browning's sconces were also displayed for sale in ten exclusive showrooms throughout the United States.  (*Id*. ¶ 5.)  Based on these facts, the Court cannot conclude that the Venetian accepted to pay for Browning's widely disclosed sconce ideas.  *See Grosso*, 383 F.3d at 965.  Browning's bid to the Venetian cannot establish a *Desny* claim.  The Venetian also did not expressly agree to pay for the design ideas because it rejected the bid and discontinued negotiations with Browning.  Accordingly, the Court GRANTS the motion to dismiss

1  Browning's implied contract claim for failure to make out a claim upon which relief may be
2  granted.

3  **F.    Browning Has Not Stated a Quasi-Contract Claim.**

4  Browning also moves to dismiss count nine for quasi-contract for failure to state a claim.
5  In the past, the legal basis for recovery under a theory of quasi-contract was that ideas were
6  considered property rights. *See Weitzenkorn v. Sol Lesser*, 40 Cal. 2d 778, 794-95 (1953).
7  However, the *Desny* court found that "California does not now accord individual property type
8  protection to abstract ideas." *Desny,* 46 Cal. 2d at 732. Thus, the Court finds that Browning has
9  not stated a legal basis to recover under a theory of quasi-contract/unjust enrichment. A quasi-
10 contract (*i.e.* an implied-in-law contract) is an obligation imposed by law "for reasons of
11 justice." *Weitzenkorn v. Sol Lesser*, 40 Cal. 2d 778, 794 (1953) (citation omitted). Quasi-
12 contracts are used by the courts to prevent unjust enrichment where recovery "is based upon a
13 benefit accepted or derived for which the law implies an obligation to pay." *Id.* As such, the
14 Court dismisses count eleven as duplicative.

15 **G.    Quasi-Contract/Unjust Enrichment Claim is Also Preempted by Copyright Law.**

16 The Venetian also moves to dismiss the state law claims of quasi-contract and unfair
17 competition on the basis that the Federal Copyright Act preempts those claims.[2] Section 301 of
18 the Federal Copyright Act provides in pertinent part:

19 > All legal or equitable rights that are equivalent to any of the exclusive rights within
>  the general scope of copyright ... are governed exclusively by this title. Thereafter,
20 > no person is entitled to such right or equivalent right in any such work under the
>  common law or statutes of any State.
21

22 17 U.S.C. § 301. The federal copyright preemption of overlapping state law claims is "explicit
23 and broad." *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 904 (9th Cir. 1992).
24 Section 301 establishes a two-part test for preemption: (1) the claims must come within the

---

[2] The Venetian also moved to dismiss the implied contract claim. Prior Ninth Circuit decisions "support treating the implied promise to pay required by *Desny* as an 'extra element' for preemption purposes." *Grosso v. Miramax Film Corp.*, 383 F.3d at 968; *see also Landsberg v. Scrabble Crossword Game Players, Inc.*, 802 F.2d 1193, 1196-97 (9th Cir. 1986)); *see also Firoozye v. Earthlink Network*, 153 F.Supp. 2d 1115, 1127-28 (N.D. Cal. 2001). However, the Court need not address the preemption issue, as the implied contract claim was dismissed on the merits.

13

subject matter of copyright and (2) the rights granted under state law must be equivalent to any of the exclusive rights within the general scope of copyright as set forth in the Act. *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973, 976 (9th Cir. 1987). Here, there is no dispute that the sconces fall within the subject matter of the Copyright Act. (Opp. Br. at 15.) Thus, the first part of the test is satisfied.

To satisfy the "equivalent rights" part of the preemption test, Plaintiff's quasi-contract/unjust enrichment and unfair competition claims, which are predicated upon the alleged reproduction of the copyrighted sconces, must be equivalent to rights within the general scope of copyright. *See Del Madera Props.*, 820 F.2d at 977. In other words, to survive preemption, the state causes of action must protect rights which are qualitatively different from the copyright laws. *Id.* (citing *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 501 F. Supp. 848, 852 (S.D. N.Y. 1980)). The state law claim must have an "extra element" which changes the nature of the action. *Id.* (citing *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985)).

The quasi-contract claim is equivalent to the copyright infringement claims. Browning's argument is based upon the premise that the law should impose an obligation on the Venetian to prevent unjust enrichment because the Venetian and Browning both understood that the Venetian would not reproduce or copy the sconces unless it accepted Browning's bid. This understanding not to reproduce or copy its sconces is "equivalent to the protection provided by section 106 of the Copyright Act" which is to reproduce, distribute, and make derivative copies. *See Del Madera Props.*, 820 F.2d at 977. The claim does not add an "extra element" which changes the nature of the action or rights secured under federal copyright law. Accordingly, to the extent Browning makes out a claim for quasi-contract, it is preempted by federal copyright law, and the Court therefore GRANTS the motion to dismiss the claim on this alternative basis.

**H.    Unfair Competition Claim is Not Preempted by Copyright Law.**

Browning alleges an unfair competition claim against the Venetian based on interference with contractual relations and sham bidding. "Unfair competition law in California prohibits any 'unlawful, unfair, or fraudulent business practice.'" *Kodadek v. MTV Networks*, 152 F.3d 1209,

14

1212 (9th Cir. 1998) (quoting *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 109 (1972)). "Knowledge and intent are essential elements of an intentional interference [with contractual relations] claim." *Summit Machine Tool Manufacturing Corp. v. Victor GNC Systems, Inc.*, 7 F.3d 1434, 1442 (9th Cir. 1993). A claim for intentional interference with contractual relations provides the extra element that is not preempted by federal law. *See id*.

Browning alleges that it was able to provide a competitive bid to the Venetian because it had discovered Diamond Life, a manufacturing company that would produce its sconces. (Compl. ¶ 20.) Diamond Life's ability to produce a large quantity of sconces at a high quality and lower price would have allowed Browning to fill large orders for potential customers such as the Venetian. (*Id.*) The Venetian allegedly used deceptive and unfair means to learn the identity of Diamond Life, and then approached the company directly to manufacture thousands of nearly identical sconces without Browning's knowledge or permission. (*Id.* ¶ 32.) This act allegedly resulted in an interference in Browning's contractual relationship with its manufacturer. The "extra element" is that there is a loss of Diamond Life's professional services, which is not an exclusive right granted in copyright law. As such, the motion to dismiss the unfair competition claims as preempted by the Copyright Act is DENIED.

**I.   Browning Has Alleged That Las Vegas Sands LLC and Las Vegas Corporation Are Defendants Under the Alter Ego Doctrine.**

The Venetian asserts that the claims against the Las Vegas Sands, LLC and Las Vegas Sands Corporation should be dismissed because Browning has failed to state a claim against them. "California law recognizes an alter ego relationship, such that a corporation's liabilities may be imposed on an individual only when two conditions are met: (1) 'there is such a unity of interest and ownership that the individuality or separateness, of the said person and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would ... sanction or promote injustice.'" *Securities and Exchange Commission v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (citing *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988)). Here, Browning alleges that Las Vegas Sands, LLC and Las Vegas Corporation are agents and alter egos of each other. (Compl. ¶ 9.) Browning further alleges that

this conduct will continue at other Venetian properties that are under construction or renovation, which may promote injustice. (Compl. ¶ 37.)  Thus, the Venetian's motion to dismiss Las Vegas Sands LLC and Las Vegas Corporation is DENIED.

**CONCLUSION**

For the foregoing reasons, and pursuant to Federal Rules of Civil Procedure 12(b)(1); 12(b)(2); 12(b)(3); 28 U.S.C. § 1404(a); and Federal Rule of Civil Procedure 12(b)(6), the Court holds as follows:

1. The motion to dismiss for lack of subject matter jurisdiction over Browning's copyright claim is DENIED;
2. The motion to dismiss for lack of personal jurisdiction over the Venetian is DENIED;
3. The motion to dismiss on the basis of improper venue is DENIED;
4. The motion to transfer to the District of Nevada is DENIED;
5. The motion to dismiss count number ten for implied contract is GRANTED;
6. The motion to dismiss count number nine for quasi-contract is GRANTED;
7. The motion to dismiss count number eleven for implied-in-law is GRANTED;
8. The motion to dismiss counts number six and seven unfair competition is DENIED; and,
9. The motion to dismiss Las Vegas Sands LLC and Las Vegas Corporation is DENIED.

The Court hereby sets a case management conference for February 8, 2008 at 1:30 p.m. The parties' joint case management statement is due on Friday, February 1, 2008.

**IT IS SO ORDERED.**

Dated: December 19, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE