**AGREEMENT**

**Between**

**KNA INTERIOR DESIGN**

**And**

**VENETIAN CASINO RESORT, LLC**

**For**

**THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE UPGRADES**

**FEBRUARY 1, 2006**

# CONSULTING SERVICES AGREEMENT

## THE VENETIAN CASINO RESORT TYPICALGUESTROOM SUITE UPGRADES

## TABLE OF CONTENTS

The Agreement                                        (20 pages)

Exhibit "A", Project Description & Scope of Work     (6 pages)

Exhibit "B", List of Subconsultants                 (1 page)

Exhibit "C", Fee for Professional Services           (3 page)

Exhibit "D", Milestone Dates                        (1 page)

Exhibit "E", Reaffirmation of
Waiver of Lien Rights
Pursuant to Section 4                               (1 page)

Consultant's Initials

Ex. A Page 2 of 33

## <u>CONSULTING SERVICES AGREEMENT</u>

This Agreement (hereinafter called the "Agreement") is made and entered into as of the 1ST day of February 2006, by and between **VENETIAN CASIO RESORT, LLC**, a Nevada limited liability company with a business address of 3355 Las Vegas Boulevard South, Las Vegas, Nevada 89109 (hereinafter called the "Owner"), and **KNA INTERIOR DESIGN**, having a business address 8255 Beverly Boulevard, Suite 225, Los Angeles, CA 90048 (hereinafter called the "Consultant").

Reference is made to the following facts:

A.    The Owner is the owner of certain real estate located at 3355 Las Vegas Boulevard South in Clark County, Nevada (the "Property"), together with the structures located thereon, commonly known as The Venetian Resort Hotel Casino.

B.    The Owner desires to engage the Consultant to act as an independent consultant for Owner in conjunction with design of the Project (as described in Exhibit "A" attached hereto) on the terms and conditions herein set forth, and the Consultant has agreed to furnish Services as described herein.

NOW, THEREFORE, for and in consideration of the mutual covenants herein contained, Owner and Consultant hereby agree as follows:

### 1.    <u>Duties of Consultant</u>

(a)    Commencing on or about February 1, 2006, Consultant shall perform such duties and have such responsibilities with respect to the Project as are outlined in Exhibit "A" attached hereto and made a part hereof and as shall be directed from time to time by the Owner (the "Services"), it being intended that such duties and responsibilities shall involve work with the various professionals associated with the Project to provide for proper and timely development of construction documents ("Deliverables") necessary to the proper and timely construction in accordance with all plans, specifications, schedules and other material and contract documents applicable thereto.  Upon request of Owner, Consultant shall furnish to Owner, with reasonable promptness, written interpretations of any documents prepared by Consultant in connection with the Project.  Consultant understands Owner is relying upon Consultant to provide all necessary resources required to timely complete the Services in accordance with Exhibit A.

Consultant's Initials 

Ex. A Page 3 of 33

(b)    In the performance of its obligations hereunder, the Consultant accepts the relationship of trust and confidence established between it and the Owner by this Agreement. Consultant represents and warrants that it has the requisite background, knowledge and expertise and is properly staffed to provide the Services required of Consultant in a timely manner. Consultant covenants with the Owner to furnish its skill and judgment in furthering the interest of the Owner.

(c)    Consultant agrees to perform the Services with due and reasonable diligence consistent with sound professional practice. If Consultant becomes aware of any defect in the design, drawings, specifications or any other documents prepared in connection with the Project, or becomes aware of any defect in the construction ("Work") or any element of the Project in which Consultant is involved, prompt written notice thereof shall be given by Consultant to Owner. Services and Deliverables will conform to the specifications set forth in this Agreement and as directed by Owner. In the event of a defect in such Services or Deliverables, Consultant will promptly correct the defect or replace nonconforming Services or Deliverables at no charge to Owner. If Consultant fails to promptly replace or correct the defect Owner may withhold further payment for Services until the defect is replaced or corrected to the satisfaction of Owner.

(d)    Consultant agrees that it is knowledgeable of and will comply with all applicable codes, laws, rules and regulations of federal, state or municipal authorities in the performance of this Agreement as they affect its work, if any, and that Consultant is licensed in the State of Nevada to perform the Services described in this Agreement. Consultant will obtain and keep current at its own expense all professional licenses necessary to perform Services. Consultant shall execute its Services so as to assure that the ultimate design is in compliance with such codes, laws, rules and regulations, by getting the approval of the supervising professional.

(e)    Except upon direction from Owner, Consultant shall not commence performance of any of Consultant's Services to be performed hereunder. Owner shall have the right to issue interim directions to Consultant to proceed with selected services from time to time in accordance with such directions from Owner, and Owner shall have the right to vary or rescind any such interim directions from time to time. If Consultant reasonably believes the time schedule should be modified as a result of any proposed variance by Owner, Consultant must within 5 days' receipt of Owner's modification, provide Owner with a detailed written estimate of the anticipated effect on the Project schedule. Failure of Consultant to respond within the 5-day period will be considered Consultant's acceptance of the change without changes to the schedule.

Consultant's Initials

Ex. A Page 4 of 33

(f)    Owner acknowledges that Consultant may engage pre-approved subconsultants as listed in Exhibit "B" hereto (or as may later be designated and approved by Owner) to assist Consultant in providing Services pursuant to this Agreement.    Any subconsultant engaged by Consultant to assist in providing Services under this Agreement shall perform those Services under the direct supervision and responsible control of the Consultant.    Consultant warrants that all subconsultants have the requisite background, expertise and licensure to assist in the performance of Services and that Consultant will remain fully liable for the work performed and for the acts or omissions of any approved subconsultant. Consultant will require approved subconsultants to comply with applicable terms of this Agreement and will enter into binding obligations of confidentiality and terms with subconsultants substantially similar to the obligations set forth in this Agreement. Owner may require Consultant to remove subconsultants for any reason.

(g)    Standard of Care/Warranty: Consultant will perform the Services in a manner consistent with that level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions in the same locale.

## 2.    Term

This Agreement shall continue until the first to occur of (i) final completion of the scope of Services; (ii) termination of this Agreement by either party as hereinafter provided; or (iii) December 31, 2007. If, for causes beyond the reasonable control of the Consultant, the Project is not completed by the date set forth in the above paragraph, the Owner and Architect shall mutually agree upon an adjustment to the fee for its Services to take into account the extension of the time for performance.

## 3.    Compensation

(a)    For the Services provided hereunder, the Owner will pay to the Consultant, as provided herein, fees and reimbursable expenses as are set forth in Exhibit "C" attached hereto. Such fees and reimbursable expenses are inclusive of any and all federal, provincial, and local taxes relating to Consultant's Services. Reimbursement of expenses requires prior Owner approval of expenses to be incurred. All air, lodging and travel arrangements are to be booked through Owner's affiliate, GWV Travel.

(b)    Except as herein expressly provided, the Owner shall have no obligation to make payments of any type to the Consultant.

(c)    The Consultant shall submit to Owner one invoice each month covering the Services and expenses, in such detail and with such other documentation as Owner shall reasonably request.    Owner

shall make payment within thirty (30) days of the date of receipt of an accurate invoice.

(d)     Consultant shall keep, in a form satisfactory to Owner, such full and detailed accounts and records as may be necessary and convenient for proper management of this Agreement. Such records shall include records of all time devoted to the performance of Consultant's employees and approved subconsultants. In addition, Consultant shall keep books, records, correspondence, receipts, vouchers and memoranda relating to the Services in accordance with good business practices, and shall permit Owner to inspect all such records upon request during customary business hours at Consultant's office or shall, upon request, provide copies of the same to Owner. Further, Consultant shall comply with requirements of Owner for providing cost and Services breakout data. All records described in the paragraph shall be preserved for a period of three (3) years following the completion of the Project.

(e)     The Owner shall have the right to make direct payment to the Consultant's subconsultants of any tier for Services provided under this Agreement, when all of the following conditions have been met:

1.     Such Services are included under this Agreement and have been completed to the Owner's reasonable belief and satisfaction;

2.     The Owner has paid or has attempted to pay the Consultant for such Services;

3.     The Consultant has not paid its subconsultant(s) for such Services or the Consultant has not forwarded or endorsed the Owner's payment for such Services to its subconsultant(s);

4.     The Owner has provided written notification to the Consultant of its intention to make direct payment to the Consultant's subconsultant(s).

In the event that the Owner makes direct payment to the Consultant's subconsultant(s) in accordance with the above conditions, the Owner shall be entitled to a credit against the Consultant's fees or reimbursable expenses (as defined in Article 3 of this Agreement) for the full amount of the direct payment.

## 4.     Waiver of Lien Rights

(a)     Unless Consultant performs Services or furnishes materials under this Agreement for which undisputed amounts have not been paid by Owner, Consultant waives and releases all claims of lien or other encumbrances, or rights to file claims of lien or other encumbrances,

whether presently existing or arising in the future, against the real property and improvements thereon, otherwise known under this Agreement as the Property. Other than a lien which is the result solely of Owner's failure to issue payment to Contractor in breach of this Agreement, Consultant shall not file any lien or other encumbrance or allow any party employed or retained by Consultant, directly or indirectly, to file any lien or encumbrance against the Owner, the Property, or the Project for any sum, due or to become due for any Services performed or materials furnished by, to, or on behalf of Consultant, or any party employed or retained by Consultant, directly or indirectly, nor shall Consultant suffer or permit any such lien or encumbrance to be so filed because of any claim or demand against or any action or non-action of Consultant or any party employed or retained by Consultant, directly or indirectly. If any such lien or encumbrance has been so filed, Consultant shall promptly cause the removal or discharge thereof from the Property and the Project site and no payment shall be made to Consultant until said lien or encumbrance has been removed or discharged or there has been furnished to Owner a bond or other security satisfactory to Owner protecting and holding harmless the Owner from any liability, fees, or costs (including, without limitation, attorney fees in connection therewith). Owner shall be entitled to deduct from any monies due Consultant any damages Owner suffers as a result of the filing of such lien(s).

(b)    The failure of Consultant after ten (10) days written demand by Owner to remove or discharge a lien filed by Consultant or by any party employed or retained by Consultant, directly or indirectly, or cause such lien or claim to be removed by a lien release bond and removed as a cloud against the title of the Property, or to provide Owner with sufficient bonds or sureties, written by companies satisfactory to Owner, for one and one-half (1-1/2) times the amount of the claim, shall constitute a material breach of the Agreement. In such event, Owner shall have the right to retain out of any payment due, or thereafter to become due Consultant, an amount sufficient to fully indemnify Owner against such lien or other claim. In addition, Consultant hereby consents to Owner seeking and obtaining a dismissal of Consultant's lien by legal action (including, but not limited to a motion pursuant to NRS 108.2275) in the event Consultant refuses or fails to remove or discharge its lien as set forth hereunder. Nothing contained in this paragraph shall be construed to relieve Consultant of its duties under Section 4(a) above.

(c)    Consultant shall not be relieved or excused of any of the obligations set forth in Paragraph 4 above based upon a claim by Consultant that Owner has breached any of Owner's obligations under this Agreement. The absence of any such similar provision with respect to any other obligation of Consultant under this Agreement shall not be interpreted to mean that such obligation is excused or relieved based upon a claim by Consultant that Owner is in breach of any obligation under this Agreement.

Consultant's Initials

(d)     In addition, Consultant shall execute and have each of its subconsultants or subcontractors of any tier execute the Reaffirmation of Waiver of Lien rights attached hereto as Exhibit "E", which execution by Consultant and any of Consultant's subconsultants and/or subcontractors shall be a prerequisite to Owner's payment of any sums due to Consultant and/or any of Consultant's subconsultants or subcontractors.

## 5.     Independent Consultant

The Consultant recognizes that it is engaged as an independent consultant and contractor for all purposes and at all times. Consultant has the responsibility for and control over the methods and details of performing Services and will provide all tools and materials. Consultant does not have any authority to act on behalf of Owner or to bind Owner to any obligations. Consultant acknowledges that all persons performing Services hereunder shall be employees or agents of Consultant and the Owner will have no responsibility to provide insurance or other fringe benefits normally associated with employee status, the Consultant hereby agreeing to make its own arrangements for any of such benefits as it may desire. Consultant shall be solely responsible for the payment of all taxes and benefits required by law including those for such employees or agents and is responsible for compliance with self-employment related laws, and shall indemnify and hold Owner harmless from any and all liabilities or costs related to any of the foregoing.

## 6.     Termination

(a)     Termination by Owner.   This Agreement may be terminated, in part or in whole, by Owner upon seven (7) days written notice at any time and for any reason without liability, except as expressly provided in this Subsection 6(a).   In the event of termination, Consultant shall be paid for such terminated Services performed up to the termination notice date plus reasonable and Owner approved termination expenses. Expenses of termination or suspension may include all direct costs of Consultant required to complete analyses and records necessary to complete its files and may also include a report on the Services performed to the date of notice of termination or suspension. Nothing in this section shall preclude Owner from recovering or offsetting any damages Owner may incur in the event Owner terminates this Agreement. Upon receipt of any notice of termination, Consultant shall (i) cause Consultant's Services to be terminated and (ii) assign or cause to be assigned to Owner to the extent directed by Owner, all of Consultant's right, title and interest in and to this Agreement, and any and all other agreements and documents with respect to the Property, and (iii) transfer or cause to be transferred title and deliver or cause to be delivered to Owner, as directed by Owner, all plans, drawings and specifications produced, prepared or acquired for the purpose of performing under this Agreement. Owner may, after such termination, complete Consultant's Services by whatever

Consultant's Initials

method Owner may deem expedient. **If at any time after the date of this Agreement any act or failure to act on the part of Consultant (whether before or after the date of this Agreement) in the reasonable judgment exercised in good faith of Owner is likely to result in significant negative publicity for Owner or, its affiliates, or their directors, officers, or employees, or create any problems with any regulatory or licensing agencies with jurisdiction over Owner or any affiliate of Owner, Owner shall have the right to immediately terminate this Agreement and be released from all further obligations hereunder by giving written notice of termination to Consultant specifying the date of such termination.**

(b)    <u>Termination by Consultant</u>.  This Agreement may be terminated by Consultant for cause.  Owner's failure to pay Consultant in accordance herewith for undisputed amounts due or any other failure to perform a material obligation hereunder shall constitute an event of default.  In the event of such default, Consultant shall provide written notice to the Owner specifying the action or inaction that is the basis of the default.  If the Owner has not substantially cured said default within thirty (30) days after receipt of the breach notice or if Owner is not pursuing the cure of such default, Consultant shall be entitled to terminate this Agreement without further obligation hereunder.

(c)    <u>No Release of Obligations</u>.    Termination of this Agreement is without prejudice to any other right or remedy of the parties.  Termination of this Agreement for any reason does not release either Owner or Consultant from any liability which at the time of termination, has already accrued to the other party or which may accrue in respect of any act or omission prior to termination or from any obligation which is expressly stated to survive termination.  Termination of this Agreement shall not extinguish obligations of confidentiality, the duties not to use or disclose proprietary information, indemnification or any other obligations or duties that have accrued by reason of activities during the term of this Agreement; such duties shall continue after termination and shall remain subject to the terms of this Agreement despite termination.

7.    **Insurance**

The Consultant shall obtain and maintain in force the following insurance coverages from insurance companies authorized to do business in Nevada covering activities under this Agreement for the duration of this Project:

(a)    Workers' Compensation-Statutory limits as required by State of Nevada.

(b)    Employers' Liability - $1,000,000.00 (One million dollars) combined single limit applicable to each

employee for any one accident /all employees for any one disease. Such coverage to specifically apply to the State of Nevada.

(c)     Automobile Liability - $1,000,000.00 (One million dollars) combined single limit for any one accident covering "Any auto (symbol 1) whether owned, non-owned and hired."

(d)     Commercial General Liability, ISO form CG 00 01 or its equivalent, with a combined single limit of $1,000,000.00 (One million dollars) per occurrence for Bodily Injury, Personal Injury and/or Property Damage Liability. If such policy includes a General Aggregate limit then the General Aggregate limit shall not be less than $2,000,000.00 (Two million dollars). Coverage is to ensure the indemnity clause of this Agreement and to include premises operations, products/completed operations, blanket contractual liability coverage and personal and advertising injury with no specific exclusions that would apply to this Agreement.

(e)     Umbrella liability coverage of $2,000,000.00 (Two million dollars) providing coverage no less restrictive than that required for the Employers' Liability, Auto Liability and Commercial General Liability insurance coverages.

(f)     Professional Liability Insurance naming the Consultant as the insured in an amount of not less than Two Million Dollars ($2,000,000), which shall include the coverage for reasonable attorney fees and investigation. Such policy shall cover claims arising out of errors or omissions during the performance of professional services and shall be on a "claim-made" basis. The Consultant shall keep such insurance in force during the course of this Agreement and for a period of not less than three (3) years after the date of Substantial Completion of the Work in accordance with the terms of Construction Contract. Such policy shall provide that the Consultant's insurer shall defend any suit or proceeding against the Consultant to the extent caused by the negligent errors or omissions during the performance of the Consultant's professional services even if such suit or proceeding is groundless, false or fraudulent. The Consultant shall require its Subconsultants to provide the same

Professional Liability Insurance coverage, unless otherwise agreed by the Owner in writing.

(g)    The Consultant shall carry sufficient valuable papers insurance to cover the restoration of all Agreement Documents prepared by the Consultant pursuant to this Agreement, including plans, drawings, specifications, Construction Drawings and other related documents in the event of loss or destruction.

7.1    Notice of Cancellation or Modification; Additional Insureds. For all policies, the Consultant agrees to have insurer provide thirty (30) days prior written notice of cancellation, non-renewal or reduction of coverage to Owner. The Consultant further agrees that it will name Owner and its parent, subsidiary and affiliated companies and the officers, directors, agents, shareholders and employees of each as additional insureds (together the "Additional Insureds") in their automobile, general liability and umbrella liability policies. Coverage shall be placed with an "A-IX" rated Best Insurance Guide carrier or better and acceptable to Owner.

7.2    Evidence of Insurance. Ten (10) days prior to start of work, Consultant shall provide Owner with certificates of insurance as evidence of required insurance above. Such certificates shall contain certified copies of endorsements providing thirty (30 days prior written notice of cancellation, non-renewal or reduction and naming the Additional Insureds above as additional insureds. Upon request, Consultant's subconsultants shall furnish Owner a copy of the policy(ies) of insurance required by the above.

## 8.    Indemnification

The Consultant agrees, to the fullest extent permitted by law, to indemnify, defend and hold harmless the Owner, its parents and its affiliates and their respective officers, directors and employees (collectively, "Owner Indemnitee") from and against all damages, loss, expenses, liabilities, or costs, including reasonable attorneys' fees and defense costs(collectively "Damages"), to the extent such Damages are a proximate result of any act or omission of Consultant under this Agreement or are caused by the Consultant's negligent or intentionally wrongful performance of professional Services under this Agreement or that of its subconsultants or anyone for whom the Consultant is legally or contractually liable.

The Owner agrees, to the fullest extent permitted by law, to indemnify and hold harmless the Consultant, its officers, directors, employees and subconsultants (collectively Consultant) against all direct damages, liabilities, or costs, including reasonable attorneys' fees and defense costs, arising out of a claim by a third party to the extent caused

by the negligence or intentional acts or omissions of Owner or any of its employees or anyone for whom the Owner is legally liable.

Neither the Owner nor the Consultant shall be obligated to indemnify the other party in any manner whatsoever for the other party's own negligence.

## 9.    Confidential Information

(a)    All information disclosed by Owner to Consultant in connection with this Agreement, including without limitation, all of Owner's concepts, customer lists and information, all computer and other programs, data information, management policies, business strategies, methods of doing business, recruitment, solicitations, techniques, protocols, trade secrets, know-how, processes, manuals, memoranda and other materials and information provided by Owner, its agents, employees, representatives, affiliates, subsidiaries or related entities, or otherwise ascertained in any manner by Consultant in the course of performing the Services hereunder, shall be considered confidential and proprietary (the "Confidential Information"). The Confidential Information shall not include information that is currently in the public domain, or a part of the public domain as a result of future lawful actions of any party which does not contravene this Agreement or information that is required to be disclosed by Consultant as a result of a subpoena, court or other administrative order, provided Consultant complies with subparagraph 9(b) below. Consultant understands and agrees that all Confidential Information shall be and remain at all times, whether during the term of the Agreement or after any termination thereof, the confidential, proprietary, and sole and exclusive property of Owner. All such Confidential Information shall be held in the strictest of confidence, including without limitation as follows:

(i) Confidential Information shall be utilized for the sole and limited purposes of performing its obligations under this Agreement with Consultant;

(ii) Dissemination of the Confidential Information shall be limited to only those of the Consultant employees who have a need to know to perform the tasks required and who have agreed to the terms of the confidentiality provisions of this Agreement;

(iii) Confidential Information shall not be revealed or disclosed outside of the Consultant's organization;

(iv) Consultant shall utilize its commercially reasonable efforts to protect the confidentiality of the

Consultant's Initials

Confidential Information and proprietary interest therein; and

(v)  Confidential Information shall be turned over within ten (10) days of the termination of this Agreement, time being of the essence.

(b)    In the event that Consultant shall be required by subpoena, court, or administrative order to disclose any of the information, Consultant shall give immediate written notice thereof to Owner to the attention of Frederick H. Kraus, Vice President and General Counsel, 3355 Las Vegas Boulevard South, Las Vegas, Nevada 89109.  Upon receipt of same, Owner expressly reserves the right to interpose all objections it may have to the disclosure of its information.

(c)    The parties agree that any designs, devices, techniques, or other patentable or copyrightable material developed by either party hereunder shall be and remain the property of Owner.  Such developed material will at all times be deemed Confidential Information.

(d)    The Consultant acknowledges that any breach, violation or evasion by the Consultant of any of the terms of this subparagraph 9 will result in immediate and irreparable injury and harm to Owner, and will cause damage to Owner in amounts that are difficult to ascertain and that cannot be precisely measured.   Accordingly, the Consultant agrees and acknowledges that in the event of any action or omission by the Consultant that results in or may tend to cause the unauthorized or improper disclosure of any Confidential Information, Owner shall, in addition to any other rights or remedies at law or in equity, be entitled to obtain immediate injunctive relief enjoining such conduct on the part of the Consultant, prohibiting the Consultant's further use of the Confidential Information, and requiring the immediate return of all such Confidential Information (including without limitation all documentary and electronic copies thereof) to Owner.  In the event of any such breach, violation, or evasion, the Consultant consents to the propriety of the remedy of injunctive relief and/or specific performance.  The Consultant further shall reimburse Owner for all of the damages, costs, and expenses, including without limitation reasonable attorneys' fees, that Owner may sustain in connection with efforts to enforce this provision, or as a result of any unauthorized disclosure of Confidential Information by the Consultant.

(e)    This confidentiality provision shall survive the termination of the Agreement.

10.    **Notices**

All notices, consents, or other communications provided for hereunder, including without limitation notices of default, termination of

Consultant's Initials

this Agreement and readiness for inspection of portions of the Services, shall be deemed effective (i) on the date when hand-delivered; (ii) on the date when forwarded by facsimile transmission provided electronic confirmation of receipt is obtained and retained; or (iii) upon receipt of certified mail, return receipt requested and postage prepaid.  All notices shall be addressed to the parties at their addresses set forth below:

As to Owner:

Venetian Casino Resort

3355 Las Vegas Blvd. S.
Las Vegas, NV  89109
Attention:     James E. Beyer - AIA
Title:           Vice President - Design
Phone:         (702) 414-3523
Fax:            (702) 414-3535

Copy to:

Executive Office
Venetian Casino Resort
3355 Las Vegas Blvd. S.
Las Vegas, NV  89109
Attention:     Frederick H. Kraus
Title:          Vice President and
                General Counsel
Phone:         (702) 414- 4409
Fax:            (702) 414- 4421

As to Consultant:

KNA Interior Design
8255 Beverly Boulevard
Suite 225
Los Angeles, CA 90048
Attention: Kirk Nix
Title: Principal
Phone:         (323) 944-0100
Fax:            (323) 944-0105

## 11.     <u>Miscellaneous Provisions</u>

(a)     <u>Agreement of the Parties</u>.  This  Agreement  is  a consulting services contract relating to the Project and constitutes the entire agreement between the Owner and the Consultant relating in any manner to the subject matter of this Agreement.  Consultant warrants and represents that it has validly executed and delivered this Agreement and will perform all of its obligations hereunder.

(b)     <u>Captions</u>.  The captions of paragraphs in this Agreement are for convenience only and shall not be considered or referred to in resolving questions of interpretation or construction.

(c)    <u>Governing Law</u>.  This Agreement and all of the rights and obligations of the parties hereto and all of the terms and conditions hereof shall be construed in accordance with and governed by and enforced under the laws of Nevada, excluding choice of law rules. All questions concerning the validity and operation of this Agreement and the performance of the obligations imposed upon the parties hereunder shall be governed by the laws of Nevada.  Owner and Consultant agree that legal proceedings arising out of any claims made pursuant to this Agreement will be arbitrated in Las Vegas, Nevada in accordance with the arbitration terms and conditions set forth in subsection (d) below.

(d)    <u>Arbitration</u>

(i)    Any controversy or claim arising out of or relating to this Agreement or the breach of this Agreement shall be settled by arbitration administered by the American Arbitration Association under its Dispute Resolution Rules applicable to the subject of this Agreement and judgment on the award rendered by the arbitrators may be entered in any court of competent jurisdiction.

(ii)    Any controversy or claim submitted for arbitration shall be submitted to a single arbitrator selected from the panels of arbitrators experienced in the subject matter of the dispute of the American Arbitration Association.  The arbitration proceedings shall be conducted in Las Vegas, Nevada.

(iii)    The arbitration provisions of this Agreement provide the exclusive remedies and each party expressly waives the right to pursue redress in any other forum.

(iv)    The arbitrators shall not be empowered or authorized to add to, subtract from, delete or in any other way modify, the terms of this Agreement.

(v)    The costs of arbitration shall be borne by the losing party or shall be apportioned as the arbitrators shall decide.

(vi)    Consultant understands and agrees that it is waiving its right to a jury trial, or a trial before a judge in public court.

Consultant's Initials

(e)    <u>Privileged License</u>.  Consultant acknowledges that Owner and its affiliates are businesses subject to and exist because of privileged licenses issued by governmental authorities.  If requested to do so by Owner, Consultant shall obtain any license, qualification, clearance or the like which shall be requested or required of Consultant by any regulatory authority having jurisdiction over Owner or any of its affiliates. If Consultant fails to satisfy such requirement or if Owner, or any of its affiliates, is directed to cease business with Consultant by any such authority, or if Owner shall in good faith determine, in its sole and absolute judgment, that Consultant or any of its officers, directors, employees, agents, designees or representatives (a) is or might be engaged in, or about to be engaged in, any activity or activities, or (b) was or is involved in any relationship, which could or does jeopardize Owner's business or such licenses, or those of its affiliates, or if any such license is, or is threatened to be denied, suspended, revoked or curtailed, Owner shall have the right to immediately terminate this Agreement with no further liability to Consultant, except as expressly provided in Section 6(c).

(f)    <u>Waivers</u>.  No delay or omission by either of the parties hereto in exercising any right or power accruing upon the non-compliance or failure to perform of the other party hereto with respect to any of the provisions of this Agreement shall impair any such right or power or be construed to be a waiver thereof.  A waiver by either of the parties hereto of any of the covenants, conditions or agreements hereof to be performed by the other party hereto shall not be construed to be a waiver of any subsequent breach thereof or of any other covenant, condition or agreement herein contained and, no waiver shall be found except in writing by the party sought to be charged.

(g)    <u>Successors and Assigns</u>.  This Agreement shall bind the parties hereto and their permitted assigns and successors.  The Consultant shall not assign or transfer its rights or obligations under this Agreement or fees due hereunder without the written consent of Owner and any prohibited assignment shall be void.  The Owner may assign any of its rights or delegate any of its obligations under this Agreement to any lender or any affiliate of the Owner without the consent of Consultant.

(h)    <u>Authority of Parties</u>.  Owner and Consultant each warrant and represent to the other that it has requisite power and authority to enter into this Agreement and to carry out the terms and provisions of this Agreement as the same are applicable to it hereunder.  Consultant understands and agrees that no person whomsoever, regardless of such person's apparent authority, has any authority to amend, modify, terminate, or otherwise change this Agreement on behalf of Owner except for Owner's Executive Vice President, who must do so in a written document signed by him, and Consultant hereby waives and relinquishes any and all claims of apparent authority in connection herewith.

Consultant's Initials

(i)     <u>Governing Documents</u>. The Exhibits are incorporated into this Agreement by reference.   In the event any provision contained in this Agreement is inconsistent with any provision or information contained in any of the Exhibits attached, then the provisions of this Agreement shall govern.

Consultant's Initials

(j)    Conflicts of Interest.  In connection with the Services, Consultant shall not accept for its own account any trade discounts or contributions, or deal with (or recommend that Owner deal with) any firm in which Consultant has any financial or other interest, or undertake any activity or employment which would or could create a conflict of interest or compromise Consultant's professional judgment or prevent Consultant from serving the best interests of Owner.  If Consultant shall become aware of any facts which are or may be in violation or the preceding provisions of this paragraph or shall have any financial or other interest in any firm with which Owner is dealing or proposes to deal, Consultant shall immediately advise Owner thereof in writing.

(k)    Reformation.  In the event that any of the restrictions contained herein are declared to be invalid, such restrictions shall be reformed to comply with the limitations that a tribunal deems to be appropriate under applicable laws; and the validity or enforceability of the remainder of such restrictions shall not be adversely affected.

(l)    Cross-Default.  The Consultant agrees that any breach of this Agreement shall constitute a breach of not only this Agreement but also any other agreement into which the Owner and Consultant have entered and shall allow Owner to withhold payment under this Agreement or any other agreement.

(m)    Drafter.  The parties to this Agreement agree that both parties have been significantly involved in negotiating the terms and language of this Agreement and that neither party shall be deemed the drafter of this Agreement.  In the event it is construed by a tribunal, this Agreement shall not be construed for, or against either party.

(n)    Entire Agreement.  This Agreement contains the full and complete understanding and agreement of the parties with respect to the subject matter hereof, and supersedes all prior understandings and agreements, whether oral or written, concerning the subject matter hereof.  Moreover, this Agreement may not be modified or amended orally, but only by an agreement in writing signed by the parties hereto.

(o)    Force Majeure.    Neither Owner nor Consultant shall be considered in default or liable for any delay or failure to perform its obligations under this Agreement if such failure or delay arises directly or indirectly due to extraordinary forces beyond the control of the non-performing party.  Such forces include acts of nature, major transportation disruptions, government action or inaction or omission, quarantine, unusually severe weather conditions, war, terrorism or insurrection.  The time for performance of the affected party's obligation hereunder shall be extended for a period of time equivalent to the delay except that Consultant's entitlement to a time extension shall be conditioned upon Consultant's compliance with the requirements of this paragraph.  If

Consultant's Initials

Consultant is delayed as a result of any of the foregoing causes, Consultant shall notify the Owner in writing within five days of the event or circumstance giving rise to the delay. Within five days after the event or circumstance giving rise to such delay ends, Consultant shall make written application to Owner for an appropriate adjustment to Exhibit "D" (Milestone Dates), setting forth the period of extension requested and the reasons therefore.

(p) <u>Owner's Representative</u>. Owner designates James Beyer, Vice President of Design, as its Project Representative. Consultant may rely on Owner's Project Representative for data, authorizations, approvals for work to be performed and other instructions. Consultant acknowledges that changes to its compensation and Scope of Services must be authorized in writing by both the Project Representative and the Executive Vice President. If there is a change at any time as to the identity of the Project Representative, Owner shall notify Consultant of such change in writing.

(q) <u>Existing Conditions.</u> Consultant acknowledges that this Project involves the modification of a series of spaces within an existing building that is operating as a hotel/casino resort at the date of execution of this Agreement ("Base Building"). Owner will provide Consultant either directly or through Owner's Architect-of-Record, designated representative or subconsultant such information on the site and Base Building as is reasonably required for Consultant to perform the Services covered by this Agreement. Consultant further agrees to provide information reasonably required by Owner, Owner's Architect-of-Record, or their designated representative or subconsultant in order to facilitate modifications to the Base Building required by the Project. Where possible, this information shall be provided in a digital format mutually acceptable to the parties.

(r) <u>Basis of Design</u>. At the completion of the Design Phase the Owner and Consultant shall establish a Project Cost Target. The Project Cost Target, along with the Design Documents, identifies the Basis of Design for the project. The Consultant agrees to abide by the Basis of Design and to work together with the Owner to achieve the Project Cost Target. If the Consultant prepares documents that are not consistent with the Basis of Design, it shall revise the documents to be consistent at no additional cost to the Owner.

(s) <u>Opinions of Probable Construction Cost</u>. In providing opinions of probable construction cost, the Owner understands that the Consultant has no control over the cost or availability of labor, equipment or materials, or over market conditions or the Contractor's method of pricing, and that the Consultant's opinions of probable construction costs are made on the basis of the Consultant's professional judgment and experience. The Consultant makes no warranty, express or implied, that

the bids or negotiated cost of the Work will not vary from the Consultant's opinion of probable construction cost.

(t)    Use and Ownership of Documents.    All Drawings and other work product of the Consultant hereunder, whether in the form of prints, reproducible copies or computer data, are and shall remain the property of Consultant.  Consultant shall, in a manner consistent with applicable state law, provide electronic copies of its documents to Owner for Owner's facilities management use.  All copies of Drawings and other work product of the Consultant hereunder retained by the Owner may be utilized by the Owner only for the Owner's use with respect to the Project, and not for the construction of any other project.  The Owner's right to use the Drawings and other work product of the Consultant hereunder for the Project shall survive any termination of this Agreement.  The foregoing is subject to the provisions of Subparagraph (t)(ii) below.

(i)    Notwithstanding the first sentence of Subparagraph (t) above, the Consultant agrees not to utilize (or permit to be utilized) any Drawing or other work product of the Consultant hereunder, or any portion thereof, without the express prior written approval of the Owner.

(ii)    Provided that the Consultant has been paid in full for all Services rendered hereunder, and only to the extent permitted by applicable law (Nevada Administrative Code Section 623.780), the Consultant hereby grants the Owner the right to use, and permit third parties to use as authorized by Owner, any Drawing or other work product of the Consultant hereunder for any project other than the Project; provided, however that (a) if the Owner uses, or permits a third party to use, any Drawing or other such work product on a development other than the Project, the Owner shall indemnify and hold the Consultant harmless from and against all claims, including reasonable attorneys' fees, arising out of such use and (b) the Consultant shall retain its right under federal copyright law to bring a claim against any third party that uses any Drawing or other such work product without having properly obtained or derived the right to do so from or through Owner.

Consultant's Initials

(iii)    The provisions of this Subparagraph (t) shall survive any termination of this Agreement.

(u)    Provision of Electronic Data Files.    To the extent and in a form permitted by applicable law (Nevada Administrative Code Section 623.780) Consultant agrees to provide Owner a copy of its electronic data files for Owner's use in its facilities management.

(v)    Consequential Damages.    Neither party shall be liable to the other for loss of profits or revenue; loss of use or opportunity; loss of good will; cost of substitute facilities, goods, or services; cost of capital; or for any special, consequential, indirect, punitive, or exemplary damages, except for: claims for which Consultant has an obligation of indemnity under this Agreement; any grossly negligent, willful or fraudulent act or omission of Consultant; or Consultant's breach of confidentiality.

(w)    Coordination With Owner's Consultants.    It is acknowledged by the Owner and the Consultant that the implementation of the Project may necessitate the Owner's engagement of other design or technical consultants or Architects-of-Record ("Owner's Consultants"). The Consultant agrees to cooperate with, coordinate with and, if so directed by the Owner, to take direction from the Owner's Consultants. It is provided, however, that the Owner shall contractually require the Owner's Consultants to cooperate, coordinate and, if necessary, direct the Consultant.

Owner and Consultant have hereunto set their hands under seal as of the date first herein above written.

**VENETIAN CASINO RESORT, LLC**

By: _____
    Bradley H. Stone
    Executive Vice President

    _____
    Date

**KNA INTERIOR DESIGN**

By: _____

    _____
    Date

Consultant's Initials _____

**AGREEMENT**
**between**
**KNA INTERIOR DESIGN**
**and**
**VENETIAN CASINO RESORT, LLC**
**for**
**THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE**
**UPGRADES**

**EXHIBIT "A" – PROJECT DESCRIPTION**
**& SCOPE OF SERVICES**

## A.    PROJECT DESCRIPTION

The Project involves the renovation of the single-bay typical guestroom suites and common areas on levels 4-32 (3rd–33rd floors) of The Venetian hotel tower at The Venetian Casino Resort in Las Vegas, Nevada. The renovation shall encompass the following spaces (the "Areas") on each floor:

1.    Typical Guestroom Suite (Living Room, Bedroom, Bathroom)
2.    Typical Guestroom Suite Level Corridors
3.    Typical Guestroom Suite Level Public Elevator Lobbies
4.    Typical Guestroom Suite Level Rotunda

In general, the renovation shall involve changes to the color schemes and finishes of the Areas. It shall include, depending on the Consultant's recommendations, new furnishings, millwork, wallcoverings, artwork, artifacts, light fixtures, accessories, draperies, fabrics, floor finishes and limited architectural revisions. The Owner intends to maintain the walls, stonework, doorways, ceilings, floors and fixed architectural features substantially as they are presently configured.

## B.    SCOPE OF SERVICES

Phase One - Conceptual Design

The Consultant shall provide an overall evaluation of and definition for the criteria which shall form the basis for the development and implementation of the design, project schedule and budget. The Consultant shall prepare visual materials demonstrating the design intent to the Owner. Services provided during this phase shall include:

A. Project research
B. Program and schedule confirmation
C. Preparation of drawings and material sample boards

During this phase, the Consultant's deliverables shall include:

**AGREEMENT**
**between**
**KNA INTERIOR DESIGN**
**and**
**VENETIAN CASINO RESORT, LLC**
**for**
**THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE**
**UPGRADES**

**EXHIBIT "A" – PROJECT DESCRIPTION**
**& SCOPE OF SERVICES**
**(continued)**

1.   Mood Boards – The Consultant shall prepare mood boards containing images, photographs, materials and samples that define a general design direction for each Area.  The Consultant shall prepare one mood board for each color scheme for each Area.  There shall be no more than two (2) color schemes for each Area.

2.   Furnishing Floor Plan - The Consultant shall prepare a plan showing proposed modifications to the existing furniture layout for the typical guestroom suites (Area 1) only.

3.   Sections & Elevations - The Consultant shall prepare one or more section or elevation drawings for each Area.

4.   Reflected Ceiling Plan - The Consultant shall prepare a reflected ceiling plan, if required, for each Area based on the suggested furniture layout.

5.   Renderings – The Consultant shall prepare outline renderings for each Area as required.   The Consultant shall prepare renderings only with the Owner's prior approval.

The Consultant shall attend two (2) meetings in Las Vegas with the Owner during this phase.  The first meeting shall be a kick-off meeting to review the general design direction and to complete a walk-through of the Areas. The second meeting shall be a conceptual design presentation during which the Owner and Consultant shall determine the general the overall direction of the design.

Phase Two: Schematic Design

Based on the design direction established in Phase One, the Consultant shall implement the design concept and establish the overall character and quality of the design.   Services provided during this phase shall include:

A.   Review of existing and preparation of new architectural drawings including floor plans, elevations, reflected ceiling plan,

AGREEMENT
between
KNA INTERIOR DESIGN
and
VENETIAN CASINO RESORT, LLC
for
THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE
UPGRADES


EXHIBIT "A" – PROJECT DESCRIPTION
& SCOPE OF SERVICES
(continued)

electrical plans (when required) and finish details of specific areas

B.     Preliminary selection of furniture, fixtures, fabrics and finishes

C.     Presentation of preliminary art and accessories for guest unit/corridors

D.     Preparation of an outline statement of probable cost for the FF&E

E.     Preparation of a generic finish schedule for pricing purposes

During this phase, the Consultant's deliverables shall include:

1.     Floor Plans – The Consultant shall prepare and present to the Owner preliminary floor plans of the furniture for all Areas.

2.     Reflected Ceiling Plans - The Consultant shall prepare and present to the Owner preliminary reflected ceiling plans for all Areas.

3.     Sections & Elevations - The Consultant shall prepare and present to the Owner section and elevation drawings for all Areas as required.

4.     FF&E Color/Material Boards – The Consultant shall prepare and present to the Owner display boards containing materials, photographs and color samples representing the color, materials and design of each Area.

The Consultant shall attend two (2) meetings in Las Vegas with the Owner during this phase.

Phase Three - Design Development

Based on the approved schematic design, the Consultant shall prepare drawings, specifications and other visual materials that fix the character and scope of the design for the Project.  This material shall describe furniture, fixtures, equipment, materials, interior construction and other elements as may be appropriate for the Contractor to construct a full size

**AGREEMENT**
between
**KNA INTERIOR DESIGN**
and
**VENETIAN CASINO RESORT, LLC**
for
**THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE
UPGRADES**

**EXHIBIT "A" – PROJECT DESCRIPTION
& SCOPE OF SERVICES
(continued)**

mock-up of the Project. Services provided during this phase shall include:

A.     Formalization of an interior design concept(s), including color schemes and interior millwork

B.     Design, coordination and specification of interior finishes, furnishing and artwork as required for the Project

C.     Collaboration and coordination with the Owner, the Owner's Consultants and/or the Contractor on issues pertaining to the design of the Project

During this phase, the Consultant's deliverables shall include:

1.     Model Room & Corridor Documents - The Consultant shall issue a full set of design development drawings and three (3) fully swatched sets of specifications for a model room and model corridor.  The Owner contemplates the construction of a model room for each color scheme agreed upon with the Consultant.

2.     Design Development Documents - The Consultant shall deliver a full set of design development drawings and specifications, including floor plans, reflected ceiling plans, elevations, electrical switching plans, elevations, sections and details developed to a level of detail sufficient to allow the Owner to prepare a cost estimate.

3.     FF&E Color/Material Boards – The Consultant shall present final versions of the color and material sample boards for each Area.

4.     Renderings - With the prior approval of the Owner, the Consultant shall prepare and present full color renderings showing the final design for all Areas.

The Consultant shall attend two (2) meetings in Las Vegas with the Owner during this phase.

**AGREEMENT**
between
**KNA INTERIOR DESIGN**
and
**VENETIAN CASINO RESORT, LLC**
for
**THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE
UPGRADES**

**EXHIBIT "A" – PROJECT DESCRIPTION
& SCOPE OF SERVICES
(continued)**

Phase Four: Contract Documents

Following approval of the model room and model corridor, the Consultant shall prepare construction documents to a level of detail necessary to allow the Contractor to construct the Project. Activities during this phase include:

A.   Coordination with Owner's consultants
B.   Preparation of coordinated drawings, specifications, sample books and other visual and technical material
C.   Coordination with the Contractor to insure the constructability of the Project

During this phase, the Consultant's deliverables shall include:

1.   Plans with furniture and art placement and interior accent lighting fixture selections and locations
2.   Interior floor finish schedule
3.   Reflected ceiling plans
4.   Interior elevations
5.   Selection and placement drawings for other fixtures
6.   Applicable built-in interior design details
7.   Material reference specifications
8.   Final FF&E specifications (three [3] fully swatched sets)

The Consultant shall attend two (2) meetings in Las Vegas with the Owner during this phase.

Phase Five - Construction Observation

During the construction observation phase the Consultant shall make periodic visits to the Project to insure that the work is being performed in accordance with the construction documents. Services provided during this phase shall include:

Venetian Proprietary Information 6/06        A-5        Consultant's Initials

**AGREEMENT**
**between**
**KNA INTERIOR DESIGN**
**and**
**VENETIAN CASINO RESORT, LLC**
**for**
**THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE**
**UPGRADES**

**EXHIBIT "A" – PROJECT DESCRIPTION**
**& SCOPE OF SERVICES**
**(continued)**

A.    Review of all interior design shop drawings and submittals
B.    Site inspection during construction
C.    Final inspection and approval of all furnishings and interior finishes
D.    Monitoring installation of art & accessories
E.    Completion of a Punch List
F.    Project wrap-up
G.    Coordination with the Owner's Consultants
H.    Coordination with the Contractor

During this phase, the Consultant's deliverables shall include:

1.    Submittals and Shop Drawing Review - The Consultant shall provide written review action on the Contractor's shop drawings and submittals for interior design provided by the Consultant (review action shall be provided within five [5] working days of receipt by the Consultant).

2.    RFI Responses - The Consultant shall provide written responses to requests for information (RFI's) prepared by the Owner and/or Contractor.

3.    Supplemental Information - The Consultant shall provide supplemental information in the form of sketches, drawings or technical specifications when required or requested by the Contractor.

The Consultant shall visit the Project during this phase as required by the Owner and in accordance with the "Out-of-Office Days" policy described in Section C of Exhibit "C" attached hereto.

<u>PROCUREMENT</u>

The Owner may elect to have Consultant purchase art, antiques and accessories. Such Services shall be considered Additional Services as described in Section B of Exhibit "C" attached hereto.

**AGREEMENT**
**between**
**KNA INTERIOR DESIGN**
**and**
**VENETIAN CASINO RESORT, LLC**
**for**
**THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE**
**UPGRADES**

## EXHIBIT "B" – LIST OF CONSULTANTS AND SUBCONSULTANTS

**Consultant's Subconsultants**

None at the time of the execution of this Agreement.


**Owner's Consultants**

None at the time of the execution of this Agreement.

**AGREEMENT**
**between**
**KNA INTERIOR DESIGN**
**and**
**VENETIAN CASINO RESORT, LLC**
**for**
**THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE**
**UPGRADES**

## EXHIBIT "C" – FEE FOR PROFESSIONAL SERVICES

### A.    FIXED LUMP SUM FEE

For performance of the Services, the Owner shall pay the Consultant a Fixed Lump Sum Fee of One Hundred Sixty Nine Thousand Dollars ($169,000), to be invoiced according to a fee schedule mutually agreed to by the Owner and the Consultant.

The Fixed Lump Sum Fee shall be broken down as follows:

| | |
|---|---|
| Retainer (5%) | $8,450 |
| Conceptual Design (15%) | $25,350 |
| Schematic Design (20%) | $33,800 |
| Design Development (30%) | $50,700 |
| Contract Documents (20%) | $33,800 |
| Construction Observation (9%) | $15,210 |
| After Final Inspection (1%) | $1,690 |
| Total | $169,000 |

The Fixed Lump Sum Fee is inclusive of all Services described in Exhibit "A" attached hereto. The Fixed Lump Sum Fee is exclusive of fees for subconsultants not yet engaged as of the date of the signing of this Agreement, as referenced in Exhibit "B" attached hereto.

The Fixed Lump Sum Fee allows for the meetings in Las Vegas set forth in the Scope of Services descriptions of Phases One through Four in Section B of Exhibit "A" attached hereto. During Phase Five, the Consultant has allowed twelve (12) out-of-office-person days by Consultant to attend meetings or conduct other activities with the Owner, the Owner's Consultants, the Consultant's Subconsultants, the Contractor, or others, all subject to the Owner's approval. The Consultant shall maintain a log of out-of-office-person days and make it available to Owner for review upon request. If the Owner requests additional out-of-office-person days the Owner and Consultant shall mutually agree on compensation as an Additional Service as provided for under Section 3 of this Exhibit "C".

The Fixed Lump Sum Fee is exclusive of Reimbursable Expenses as described in Section C of this Exhibit "C".

Draft 1 for Legal & Consultant Review          C-1          Consultant's Initials

AGREEMENT
between
**KNA INTERIOR DESIGN**
and
**VENETIAN CASINO RESORT, LLC**
for
**THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE
UPGRADES**


**EXHIBIT "C" – FEE FOR PROFESSIONAL SERVICES
(continued)**


## B.    ADDITIONAL SERVICES

The Owner may request Services of the Consultant that are not described in Exhibit "A" attached hereto.  These Services shall be considered Additional Services.  The Owner acknowledges that the Procurement Services described in Exhibit "A" attached hereto are Additional Services.

Services and coordination of subconsultants not yet engaged as of the date of signing of this Agreement shall be considered Additional Services.

Compensation for Additional Services shall be determined by either of the means described below:

1.    On a Time & Material basis in accordance with the following hourly rates:

| | |
|---|---|
| Principal | $225.00 |
| Project Director | $175.00 |
| Senior Designer | $175.00 |
| Architectural Designer | $150.00 |
| Project Designer | $125.00 |
| Clerical | $50.00 |

2.    On a Lump Sum Fee basis as mutually agreed to by the Owner and the Consultant.

## C.    REIMBURSABLE EXPENSES

Reimbursable Expenses shall be invoiced monthly as incurred, or within six months of the date they were incurred.  Such expenses include but are not limited to travel subsistence, long-distance telephone, telex, fax, blueprinting, photo reproduction copying, professional renderings, express mail and delivery service.

Consultant shall make airfare and lodging reservations through the

Draft 1 for Legal & Consultant Review          C-2          Consultant's Initials

**AGREEMENT**
**between**
**KNA INTERIOR DESIGN**
**and**
**VENETIAN CASINO RESORT, LLC**
**for**
**THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE**
**UPGRADES**


**EXHIBIT "C" – FEE FOR PROFESSIONAL SERVICES**
**(continued)**


Owners designated travel agent. If, for reasonable cause, Consultant is unable to make such arrangements through Owner's designated travel agent, Owner shall reimburse Consultant for airfare and lodging expenses.

Consultant's Principals are entitled to first class airfare. Other members of the Consultant's staff are entitled to coach class air fare.

Reimbursable Expenses shall be invoiced at cost, without markup, and without detailed backup. For reasonable cause, Owner may request detailed backup of Reimbursable Expenses.

**AGREEMENT**
**between**
**KNA INTERIOR DESIGN**
**and**
**VENETIAN CASINO RESORT, LLC**
**for**
**THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE**
**UPGRADES**

### EXHIBIT "D" – MILESTONE DATES

| | |
|---|---|
| Commence Services | February 1, 2006 |
| Duration for Phase One (Conceptual Design) | Six (6) Weeks |
| Duration for Phase Two (Schematic Design) | Six (6) Weeks |
| Duration for Phase Three (Design Development) | Six (6) Weeks |
| Duration for Phase Four (Construction Documents) | Eight (8) Weeks |
| Duration for Phase Five (Construction Observation) | To Be Determined |

Consultant's Initials 

Ex. A Page 32 of 33

# AGREEMENT

## Between

## KNA INTERIOR DESIGN

### and

## VENETIAN CASINO RESORT, LLC

### For

## THE VENETIAN CASINO RESORT TYPICAL GUESTROOM SUITE UPGRADES

## EXHIBIT "E" – REAFFIRMATION OF LIEN RIGHTS PUSUANT TO SECTION 4

The undersigned hereby reaffirms that it has read, understands, and accepts all provision of the Agreement to which this is an exhibit, including without limitation Section 4 of the Agreement. The undersigned hereby acknowledges that under Section 4, the undersigned has agreed, among other things, to waive and release any rights it has to lien for any work provided by the undersigned or by any of the undersigned's subcontractors, subconsultants, or suppliers and to the extent such provision is construed not to be a waiver, does hereby waive such rights by execution of this document unless such lien would be due to nonpayment of an undisputed amount.

The undersigned hereby agrees that nothing contained in this reaffirmation shall be construed to reduce the enforceability of any provision contained in the Agreement and that the absence of such a reaffirmation for any other provision in the Agreement does not in anyway affect the enforceability of such provision.

_____

For and on Behalf of
KNA INTERIOR DESIGN